[No. 291. Decided May 6, 1892.]

S. EPHRAIM, *Appellant*, v. W. T. KELLEHER, *et al.*, *Respondents*.

CHATTEL MORTGAGE—FRAUD—SALE OF GOODS—FORECLOSURE—INTERVENTION.

An indemnity mortgage upon a stock of goods which permits the mortgagor to remain in possession, and by a parol agreement, made at the time of its execution, permits him to appropriate part of the proceeds of the sale of the property for the purpose of replenishing the stock and paying the current expenses of the business, instead of applying all the proceeds to the payment of the indebtedness for which the mortgage was given, is not fraudulent as to other creditors, unless the mortgage was given for the purpose of aiding the debtor to defraud such other creditors.

Under Code 1881, § 1997, an attaching creditor may, although his attachment has been dissolved by an assignment for the benefit of creditors, intervene in an action to foreclose a mortgage upon the property thus assigned, for the purpose of having the mortgage declared invalid as against him.

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*Thompson, Edsen & Humphries*, for appellant.
*Allen & Powell*, for respondents.

The opinion of the court was delivered by

ANDERS, C. J.—From August, 1889, until March 13, 1890, appellant and W. T. Kelleher were partners doing business as retail dry goods merchants in the city of Seattle, in this state, under the firm name and style of W. T. Kelleher & Co. On February 28, 1890, the firm, being indebted, settled with their creditors by paying half of their indebtedness in cash, and giving their firm notes for the balance to Schweitzer & Co., of San Francisco, who represented all of their creditors. There were four of these notes, each for the sum of $3,133.80, and amounting in the aggregate to $12,534.20. On March 13, 1890, the firm of Kelleher & Co. was dissolved by mutual consent. By the terms of the agreement of dissolution Ephraim retired from the firm and Kelleher was to retain all the stock of goods then on hand, and all other firm assets, and promised and agreed to pay all of the co-partnership notes and debts, and to save Ephraim harmless from all liability on account thereof. It was also agreed between them that Ephraim should retain the same control of the business that he had before the dissolution until the notes and debts of the firm for which he was liable should be paid; but it appears from the evidence that that part of the agreement was disregarded, and that, in fact, the business was thereafter conducted exclusively by Kelleher. Notice of the dissolution was given by publication in the newspapers and personally to those with whom the firm had formerly dealt, but the firm name of Kelleher & Co. was retained by Kelleher after the dissolution. Ephraim remained in Seattle after the dissolution a greater part of the time, until about July 20 or 25, 1890, at which time he concluded to go to his home in California to remain. Before leaving, however, he entered into an agreement with Kelleher whereby the latter was to give him a chattel mortgage upon the entire stock of goods then in his store in Seattle, and upon the

fixtures and all his book accounts and notes, to indemnify him against his liabilities upon the notes to Schweitzer & Co., then amounting to $9,401.40 (one of the notes having been paid), and upon an indebtedness of Kelleher of $465 to Newhall, Sons & Co., and of $300 to the Merced Woolen Mill Company, for which he had agreed to be responsible. The mortgage was executed, according to this agreement, by Kelleher and wife, on July 28, 1890, and delivered to Ephraim's agent, who caused it to be recorded on August 11, 1890.

A day or two subsequent to the recording of the mortgage, the respondents, Fleischner, Mayer & Co. and Newstadter Bros., respectively, commenced actions against Kelleher in the superior court of King county, in which actions writs of attachment were issued and placed in the hands of respondent, McGraw, who was sheriff of King county, by virtue of which he levied upon and took possession of the property and goods belonging to said Kelleher, and covered by the said mortgage. Appellant Ephraim thereupon commenced an action to foreclose his chattel mortgage, and asked to have the same declared to be a lien prior to the attachment liens of the defendants, and prayed for the appointment of a receiver to take charge of and sell the property under the direction of the court. A receiver was accordingly appointed, who sold the property, and now holds the proceeds, subject to the order of the court. As a defense to the action the attaching defendants alleged in their answer that the mortgage was given without consideration, and was executed and delivered by Kelleher for the purpose of hindering, delaying and defrauding his creditors and the said defendants, and that the same was fraudulent and void as to the defendants and the creditors of Kelleher.

After the institution of the foreclosure proceedings a number of other creditors of Kelleher commenced actions

against him, in which writs of attachment were issued and
levied on the same goods, for the recovery of their respect-
ive claims and demands, several of whom, by leave of the
court, intervened in the foreclosure suit, and likewise con-
tested the validity of the mortgage. On September 23,
1890, and before judgment was rendered against him in
any of these actions, Kelleher made a general assignment
of all his property for the benefit of his creditors, under
the act of March 6, 1890. An assignee was appointed,
who duly qualified, and thereafter intervened in the fore-
closure suit, and asked to have the mortgage declared
fraudulent and void as to the creditors of Kelleher. After
the making of the assignment a motion was filed by plaint-
iff to dissolve the attachments, which motion was over-
ruled, and the court proceeded to try the case upon the
issues thus raised. Subsequent to the commencment of
his action to foreclose the mortgage, the plaintiff, Ephraim,
paid or secured the payment of the Schweitzer & Co.
notes, described in the mortgage. Upon the trial the
court gave judgment in favor of Ephraim and against
Kelleher for the sum of $10,916 and costs, and in favor
of the assignee and intervenors, and against the plaintiff
for their costs. As a conclusion of law from the facts
found, the court stated that, as to the assignee and credi-
tors of Kelleher, the mortgage sued on was fraudulent and
void, and that the proceeds of the property in the hands of
the receiver should be delivered to the assignee as assets
under the assignment. The plaintiff excepted to all the
conclusions of law stated by the court, except that which
stated that the plaintiff was entitled to judgment against
the defendant, and moved the court to so change the con-
clusions of law as to state that the mortgage should be
foreclosed as against all of the defendants. The court de-
nied the motion and the plaintiff duly excepted. Judgment
was thereupon entered in accordance with the conclusions

of law stated by the court, and the plaintiff appealed to this court.

Following the description of the property the mortgage recites, in substance, that it is given to secure, indemnify and hold harmless the mortgagee from all liability, loss or damage accruing, directly or indirectly, by reason of the failure or refusal of the said W. T. Kelleher to pay off and satisfy the whole or any part of the amount due or to become due upon all or any of the aforesaid promissory notes, or upon all or any of the aforesaid accounts, or upon all or any of the claims of the creditors of the original firm of Kelleher & Co., for whose benefit the aforesaid promissory notes were executed. It also sets forth the fact that the parties thereto had been partners; that the firm was dissolved by Kelleher purchasing the interest of Ephraim, the giving of the notes to Schweitzer & Co. for the benefit of their creditors, and the agreement of Kelleher to pay the firm liabilities. The mortgage also contains the following provisions:

"And it is agreed, if the mortgagors shall fail to cause said promissory notes, and each of them, to be duly paid off, satisfied and canceled, or shall fail or refuse to cause the aforesaid account of Schweitzer & Company to be paid off and satisfied, or shall fail or refuse to cause the aforesaid account in favor of the Merced Wool Mill Company to be paid off and satisfied, or if the aforesaid stock, goods, wares, merchandise and fixtures, or any part thereof shall be levied upon by any writ of attachment, execution or other proceedings, or shall come into the hands of any sheriff, assignee, receiver, administrator, executor or other officer, or if all or any one of the aforesaid promissory notes shall fall due and remain unpaid, then, and in that event, the mortgagee may immediately take possession of said property, goods, wares, merchandise, fixtures, book accounts and promissory notes, using all force necessary so to do, and may immediately proceed to sell the same in the manner provided by law, and from the proceeds may pay the whole

amount due or thereafter to become due upon each and all of the aforesaid promissory notes, and upon the account of the aforesaid Newhall, Sons & Company; and upon account of the said Merced Woolen Mill Company; and also from the proceeds aforesaid, pay and satisfy the reasonable costs and expenses of selling said stock, appropriating the proceeds thereof to the purposes aforesaid, and for the payment of reasonable and proper attorney's fees, in the sum of ten per cent. of the amount of said stock so taken and sold. And further, that in the event that the mortgagee shall at any time deem himself to be insecure by reason of the failure of said W. T. Kelleher to pay and satisfy the aforesaid notes and accounts, or from any other cause, then the said Ephraim shall have the right to take possession of said property and sell the same in the same manner, for the same purposes, and with the same power as hereinbefore granted."

No provision is made in the instrument for selling the mortgaged goods by the mortgagor, but the proof shows that at the time the mortgage was given, it was understood and agreed between the parties that Kelleher should have the right to sell the goods in the usual course of trade, and use part of the proceeds to pay for such new goods as might be required to keep up the stock, and to defray the expenses of conducting the business, and apply the balance in discharge of the obligation set forth in the mortgage. The controlling question in this case is whether the court below erred in adjudging the mortgage in question fraudulent and void as to the assignee and the creditors of the mortgagor. The instrument is in the usual form of indemnity mortgages. It shows no infirmities upon its face and was executed in accordance with the provisions of the statute and apparently for a legitimate purpose; and if it is to be declared invalid it must be either by reason of the parol agreement between the parties at the time of its execution whereby the mortgagor was permitted to appropriate part of the proceeds of the property for the purposes

of replenishing the stock and paying the expenses of carrying on the business, or because the mortgage was given and received for the purpose of enabling the mortgagor to defraud his other creditors.

The doctrine that fraud may be deduced, as a legal conclusion, from the mere retention by the mortgagor of the property mortgaged, can have no application under our law of chattel mortgages, for the reason that by our statute the mortgagor is the owner of the property, and, unless he stipulates to the contrary, is entitled to the possession even after default. The mortgage is a mere lien by virtue of which no title passes, or can pass, to the mortgagee, except by foreclosure and sale, in the manner provided by law. This is the plain import of the provisions of chapter 141, and §§ 618, 619, Code of 1881 (Gen. Stat., ch. 1, 2 and 3, title 19) relating to mortgages on personal property. And the mortgagor in this case having a right to the possession of the mortgaged goods, no presumption of fraud can arise from the fact that he remained in possession until the levy of the writs of attachment. This proposition does not seem to be disputed by the respondents. Nor is it claimed that the mortgage in controversy would have been rendered invalid by an agreement or provision for the sale of the goods by the mortgagor in the ordinary course of trade, provided the proceeds were to be applied exclusively to the payment of the mortgage debt. Such a mortgage was held valid in the case of *Langert v. Brown,* 3 Wash. T. 102, and we feel confident that no court in such a case would now hold the contrary doctrine, unless controlled by statute or bound by prior decisions. But the respondents contend that the fact that the mortgagee agreed to allow the mortgagor to use part of the proceeds of the sales to purchase additions to the stock and to pay the running expenses of the business, invalidated the mortgage, as to the creditors of Kelleher. And in support of their

contention they cite, among others, the case of *Wineburgh v. Schaer*, 2 Wash. T. 328, and that of *Byrd v. Forbes*, 3 Wash. T. 318. In the former case the question of the validity of a chattel mortgage was raised upon a demurrer to the answer which alleged that the mortgagor retained possession of the goods and sold and disposed of the same in the usual course of business and applied the proceeds to his own use and benefit with the knowledge and consent of the mortgagee; and the court held upon the facts as admitted by the demurrer, that the mortgage was void as to the creditors of the mortgagor. But in so holding the court did not attempt to express its own view as to the rule that should govern in determining the validity of such instruments, but followed the binding decision of the supreme court of the United States in the case of *Robinson v. Elliott*, 22 Wall. 513. In delivering the opinion of the court TURNER, J., said:

"If we were at liberty to do so, it would be profitable to take up these cases (referred to by counsel) and attempt to extract from them the rule upon the subject that seems to be most consonant with sound reason. We are stopped on the threshold of the investigation, however, by an authority of such weight that it would have great force with the court of any state where the question was still an open one; and that, as to this court, is binding and authoritative. We refer to the decision of the supreme court of the United States, in the case of *Robinson v. Elliott*, reported in 22 Wall, p. 513. It was decided in that case, by the unanimous voice of the full bench, that a chattel mortgage upon a stock of goods in trade, which permits the mortgagor to remain in possession of the property and its disposition by sale in due course of trade, at his discretion, until the maturity of the debt purporting to be secured by it, is fraudulent and void as to other creditors, without reference to the *bona fides* of the parties. We gather from the opinion, however, that the court strongly doubted if the mortgage would be invalid, in case the money derived from

the sale of the mortgaged property was applied, and was understood to be applied, to the extinction, in whole or in part, of the mortgage debt. This authority must govern us in the decision of this case."

But that case can hardly be regarded as an authority in support of the contention of respondents, for the reason that in the case at bar it does not appear that the mortgagor was authorized by the mortgagee to apply the proceeds of the property sold to his own use and benefit. But the case of *Byrd v. Forbes*, to some extent at least, would seem to support the claim of the respondents, and was probably relied on as authority for the conclusion reached by the learned judge of the superior court in this case. In that case it was stipulated, among other things, in the mortgage, that "until default be made in the payment of any of the said promissory notes, and so long as mortgagor shall keep up his stock of goods so as to be good and ample security for the payment of the said principle and interest of the said promissory notes, that the said mortgagor may and shall have the right to retain possession of the mortgaged property, and sell and dispose of the same in the usual course of his retail business and trade, or in job lots, for the sole use and benefit of mortgagee, until the said promissory notes are fully paid, and said mortgage debt is fully satisfied." And the court held that the mortgage was void for indefiniteness and as being a fraud on creditors of the mortgagor. It was observed by Chief Justice GREENE, who delivered the opinion of the court, that the mortgage fell fairly within the principle underlying the case of *Robinson v. Elliott*, 22 Wall. 513. But it would seem that the decision of the court, in its application of the doctrine of constructive fraud, really went beyond the underlying principle in the case of *Robinson v. Elliott*, for in the latter case Mr. Justice DAVIS, speaking for the court, used this language:

"But there are features engrafted on this mortgage which are not only to the prejudice of creditors, but which show that other considerations than the security of the mortgagees, or their accommodation even, entered into the contract Both the possession and right of disposition remain with the mortgagors. They are to deal with the property as their own, sell it at retail, and use the money thus obtained to replenish their stock. There is no covenant to account with the mortgagees, nor any recognition that the property is sold for their benefit."

It may be reasonably inferred from the language above quoted that the court would have sustained the mortgage then before it had the features spoken of not been ingrafted on it. And we do not feel certain that the court would have held the mortgage void in the case of *Byrd v. Forbes*, on the authority of *Robinson v. Elliott*, if it had had before it the late case of *Etheridge v. Sperry*, 139 U. S. 266, in which that case, among others, is reviewed and its meaning explained. We therefore do not consider the case of *Byrd v. Forbes* as absolutely settling the law of this state upon the question, and we certainly would not be disposed to extend the doctrine there laid down, even if we should apply it to a like state of facts. Moreover, we venture the suggestion that the mortgage under consideration in that case might well have been interpreted as showing an honest intent on the part of the parties to it; and, if that be true, it could hardly be said to be void, as matter of law. When two constructions can be given to a written instrument, one making it consistent and the other inconsistent with honesty and fairness, the former should be adopted. It was said by CAMPBELL, J., in *Gay v. Bidwell*, 7 Mich. 519, to be a cardinal rule never to infer a dishonest meaning if an honest one is possible and consistent with the whole tenor of the instrument. This is a sound and just rule of construction, and furnishes a safe test in determining the validity of chattel mortgages.

The tendency of the latter decisions appears to be against declaring these instruments fraudulent in law, unless they are necessarily so upon their face, and towards leaving the question of fraud open to investigation as a matter of fact; and this would seem to be not only consonant with reason, but in accord with sound policy.

In *New v. Sailors*, 114 Ind. 407 (5 Am. St. Rep. 632), the mortgagor was authorized by the terms of the mortgage to retain the possession of the property mortgaged, with authority to sell at retail in the ordinary course of trade. There was no agreement that the proceeds should be applied to the liquidation of the mortgage debt, nor anything to show an agreement or understanding that the mortgagor might use the proceeds for his own benefit, and it was held that it could not be judicially inferred that the mortgage was made with fraudulent intent. See also *Fisher v. Syfers*, 109 Ind. 514; *McFadden v. Fritz*, 90 Ind. 590; *Morris v. Stern*, 80 Ind. 227. And it may be here remarked that these cases hold the contrary doctrine to that supposed to obtain in Indiana at the time the decision in the case of *Robinson v. Elliott* was rendered. And as the federal courts follow the decisions of the highest courts of the several states in which the actions arise in determining the validity of chattel mortgages, if the same case were again before the supreme court of the United States, it would in all probability be decided in accordance with the doctrine of the Indiana decisions to which we have referred. See *Etheridge v. Sperry, supra.*

In Kansas, mortgages with stipulations like the one before us have, so far as we are aware, been universally sustained if made in good faith. In *Whitson v. Griffis*, 39 Kan. 211 (7 Am. St. Rep. 546), a case quite parallel with this, a chattel mortgage on a stock of goods containing a provision that motrgagor might retain possession and sell the

property in the course of trade, and account for the proceeds, and receive out of such proceeds the expenses of operating the business, together with compensation, and the means of subsistence of the family of the mortgagor during the continuance of the business, was upheld and sustained by the court. And the earlier decisions of that court are to the same effect. See *Frankhouser v. Ellett*, 22 Kan. 127 (31 Am. Rep. 171); *Howard v. Rohlfing*, 36 Kan. 357.

In Michigan, as in Indiana, the question of fraudulent intent is declared by statute to be a question of fact for the determination of the jury. But the decisions of the supreme court of that state discuss the question quite as much upon principle as with reference to the statute, and we infer from the adjudged cases that the rulings of the court would have been the same had no statute been enacted upon the subject. In the leading case of *Oliver v. Eaton*, 7 Mich. 108, which was very similar in point of fact to the one now before us, the question of fraudulent chattel mortgages is very exhaustively discussed, and the law applicable to the subject very clearly and forcibly stated. In speaking of what instruments are void upon their face, and why they are so, the court said:

" The law, wherean instrument contains illegal provisions, and such as are not reconcilable, on any possible hypothesis, with an honest or legal intent, declares it void upon its face, because no evidence could change its character. The cases in which this absolute and unchangeable presumption arises are not numerous. There are other cases in which, upon the face of the instrument, a statutory presumption arises which is only *prima facie* evidence of fraud. And there are still more cases in which the whole illegality charged must be made out by extrinsic evidence. In both of the classes last named, the jury must determine all the facts."

And in the same case the court makes this pertinent observation:

"By leaving each case to the jury, each instrument is made to stand upon its own actual merits; which is much safer in questions of fraud, whose manifestations are infinitely various, than the adoption of fixed rules, which must fail to meet numerous cases."

See also *Gay v. Bidwell, supra,* and *People v. Bristol,* 35 Mich. 28.

In Iowa the same doctrine has been maintained by an unbroken line of decisions for more than a quarter of a century. *Terbert v. Hayden,* 11 Iowa, 435; *Hughes v. Cory,* 20 Iowa, 399; *Meyer v. Gage,* 65 Iowa, 606; *Meyer v. Evans,* 66 Iowa, 179. In the latter case, by the terms of the instrument the mortgagor reserved the right to sell the stock of goods at retail, in the ordinary course of trade; and there was a parol understanding that the mortgagor should keep up the stock, and that the expenses of carrying on the business should be paid out of the proceeds of the sales; and there was no provision in the mortgage nor any parol agreement that any portion of the proceeds of the sales should be applied on the mortgage debt, but by the terms of the mortgage the mortgagee had the right at any time to take possession of the property and sell the same for the satisfaction of the debt. And it was held that the validity of the mortgage depended upon the good faith of the parties to the transaction. In *Etheridge v. Sperry, supra,* the Iowa decisions above cited are referred to and the doctrine held by them approved. In that case the question to be determined was whether as matter of law a mortgage given by a merchant on his stock of goods to secure debts not yet due, which upon its face had no imperfections, contained no reservations for the benefit of the mortgagor, and was apparently only for the security of the mortgagee, and gave him full power to take possession on default in payment, or on any misconduct of

the mortgagor, or whenever he pleased, was invalidated by the fact of a parol understanding at the time of its execution that the mortgagor might use the proceeds of his sales to support himself, and to keep up the stock by purchases, applying all of the surplus to the mortgage debt, or whether such an agreement was simply to be taken into consideration, together with the other circumstances as bearing upon the question of good faith of the parties. The supreme court of Iowa held the mortgage valid, and an appeal was prosecuted to the supreme court of the United States. The plaintiff in error relied on the cases of *Bank of Leavenworth v. Hunt*, 11 Wall. 391; *Robinson v. Elliott*, 22 Wall. 513; and *Means v. Dowd*, 128 U. S. 273—all cited by the respondents in this case—as sustaining his contention that the instruments were invalid in law. And in reference to those cases Mr. Justice BREWER, in delivering the opinion of the court, said:

"While there are some points of similarity between each of those cases and this, and while there are observations in the opinions filed in them pertinent and correct with reference to the special facts which, if disconnected from those facts and applied here, might seem authoritative, yet there are clear and sufficient reasons why neither the decisions nor the opinions should control this case."

After referring to the facts appearing in each of those cases, and fully explaining the intent and meaning of the case of *Robinson v. Elliott*, the court proceeded to say:

"In neither of those cases is it affirmed that a chattel mortgage on a stock of goods is necessarily invalidated by the fact that either in the mortgage, or by parol agreement between the parties, the mortgagor is to retain possession, with the right to sell the goods at retail. On the contrary, it is clearly recognized in them that such an instrument is valid, notwithstanding these stipulations, if it appears that the sales were to be for the benefit of the mortgagee. What was meant was, that such an instrument should not be used to enable the mortgagor to continue in business as

theretofore, with full control of the property and business, and appropriating to himself the benefits thereof, and all the while holding the instrument as a shield against the attacks of unsecured creditors."

In determining the question before it the court accepted the law of Iowa upon the subject, as settled by the decisions of the supreme court of that state as decisive, and accordingly held the mortgages in controversy valid. The concluding portion of the opinion is devoted to a discussion of the question upon general principles, without special reference to local decisions; and as it is the latest expression of the views of the court upon the subject to which our attention has been directed, we feel fully warranted in quoting it at length. It is as follows:

"Indeed, if this were an open question, we could not be blind to the fact that the tendency of this commercial age is towards increased facilities in the transfer of property, and to uphold such transfers so far as they are made in good faith; and it is at least worthy of thought, whether the rulings made by the supreme court of Iowa do not tend to make chattel mortgages more valuable for commercial purposes without endangering the rights of unsecured creditors. The law now generally requires a record of all such instruments, and that, like the recording of a real estate mortgage, gives notice to all parties interested of the fact and extent of incumbrances. Why should a transaction like this be condemned, if made in good faith and to secure an honest debt? The owner of a stock of goods may make an absolute sale of them to his creditor in payment of a debt. If an absolute, why not a conditional sale, with such conditions as he and his creditor may agree upon? As between the parties no court would question this right, or refuse to enforce the conditions. The interests of the general public are not prejudiced by any such transaction between debtor and creditor. Indeed, they are rather promoted by any arrangement under which the mortgagor can continue in business, for in ninety-nine cases out of a hundred the taking of possession by a creditor results in closing the business, and turning the debtor out of employment.

17—4 WASH.

The only parties who can claim to be injuriously affected are unsecured creditors. But they are notified by the record of the exact relations between the mortgagor and mortgagee; and surely subsequent creditors have no right to complain if they deal with the mortgagor with full knowledge of such relations. Existing creditors may of course challenge the good faith of the transaction, but if they cannot disturb an absolute sale when made in good faith, why should they be permitted to challenge a conditional sale if made in like good faith? The fact that fraudulent relations are possible, is hardly a sufficient reason for denouncing transactions which are not fraudulent. So, if the question were open, or a new one, unaffected by any settled law of the state, we incline to the opinion that the question is not one of law, so much as it is one of fact and good faith, and that the decision of the supreme court of Iowa rests on sound principles."

While the decisions of the courts of the various states on this subject are irreconcilably in conflict, it seems to us that the rule adopted in the foregoing decisions not only rests on sound principles, but is dictated by wisdom and justice. It is claimed, however, by the learned counsel for respondents, that this mortgage is fraudulent in fact, if not in law. But we have carefully examined all the testimony in the case, and we are not convinced by the evidence that appellant was actuated in accepting this mortgage by any other motive than a desire to secure indemnity from liability upon the debts therein set forth. From the evidence before us there can be no doubt of appellant's liability upon the notes and accounts mentioned in the mortgage, or that Kelleher, in consideration of appellant's interest in the firm of Kelleher & Company, at the time of its dissolution promised and agreed to pay the notes and to indemnify appellant against all liability thereon and all loss or damage resulting therefrom. And the fact that Kelleher was indebted to others at the time the mortgage was given did not render the transaction fraudulent. There is nothing in

our statutes preventing a debtor, even in failing circumstances, from preferring one creditor over another in paying his debts. Nor is it illegal for one creditor to take security from his debtor, though others may thereby be prevented from collecting their claims, if the transaction is entered into solely for the purpose of security, and not for the purpose of aiding the debtor to defraud his other creditors.

While conceding that the assignee of Kelleher was properly permitted by the court to intervene in the foreclosure proceeding, it is contended by appellant that the court erred in permitting certain attaching creditors to so intervene, and that the court further erred in refusing to strike out the complaints of the intervenors after the assignment, for the alleged reason that the attachments were dissolved by force of the assignment law of March 6, 1890, and that a mere creditor at large had no legal right to intervene for the purpose of contesting the validity of the mortgage. But if we concede that the attachments were discharged by Kelleher's assignment for the benefit of his creditors, after levy, but before judgment, and that, generally, a creditor at large cannot intervene in such an action, we are nevertheless of the opinion that these creditors were authorized by § 1997, Code 1881, to contest the right of appellant to foreclose the mortgage, which was all they undertook to do. They asked no affirmative relief whatever, but simply that the instrument be declared invalid as to them.

From all the facts in this case we are satisfied that this mortgage was valid between the parties when made, and we are not satisfied that it was rendered invalid by any subsequent conduct of the parties. We are, therefore, constrained to conclude that the court erred in holding the instrument void as to respondents. But we think the mortgage should not be declared a lien for the whole amount of the judgment rendered in favor of appellant. According

to his own showing he paid the three notes, mentioned in the mortgage, amounting to $9,401.80, by giving his bond for $900 of that sum, and paying or securing the remainder, which is $8,501.40, at the rate of seventy cents on the dollar, including the expenses. The whole sum actually paid on the notes by him, by reason of the default of Kelleher, amounts to $6,850.98, which, added to the accounts for which he became responsible, makes the aggregate sum of $7,615.98. From this should be deducted the sum of $400, received by him from Kelleher out of the proceeds of the mortgaged goods. This leaves the sum of $7,215.98 as the amount, exclusive of the attorney fee, provided for in the mortgage, and costs, for which the mortgage should be declared a lien. We have included no interest for the reason that we have discovered no evidence showing that any was paid.

The judgment of the court below is reversed and the cause remanded, with directions to enter judgment for plaintiff and against defendant, W. T. Kelleher, for said sum of $7,215.98, together with ten per cent. of said sum as attorney's fees, and for costs, and a decree foreclosing said mortgage lien and applying the proceeds of said mortgaged property to the satisfaction of said judgment and decree.

HOYT, STILES, SCOTT and DUNBAR, JJ., concur.