### DRAKE v. PAULHAMUS.[1]

#### (Circuit Court of Appeals, Ninth Circuit. February 25, 1895.)

#### No. 180.

1. ASSIGNMENTS FOR CREDITORS — CONVEYANCES BY INSOLVENT — WASHINGTON STATUTE.

The statute of Washington relative to assignments for the benefit of creditors provides that "no general assignment of property by an insolvent or in contemplation of insolvency, for the benefit of creditors, shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective debts." *Held*, following the decisions of the Washington courts, that such an assignment must be voluntary, and an actual intention to assign must exist, and that such an intention cannot be imputed to an insolvent debtor because he conveys or mortgages all his property to one or more creditors.

2. ACTION AGAINST UNITED STATES MARSHAL — PLEADING.

In an action against a United States marshal for wrongfully taking plaintiff's goods it is not necessary to allege that such goods were taken by the defendant as marshal.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This was an action by W. H. Paulhamus against James C. Drake for wrongfully taking from plaintiff's possession a stock of goods. In the circuit court plaintiff recovered judgment. Defendant brings error.

Doolittle & Fogg and Charles O. Bates, for plaintiff in error.

Frederick A. Brown, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

McKENNA, Circuit Judge. This action was originally brought in one of the superior courts of the state of Washington and transferred on the petition of plaintiff in error to the circuit court of the United States for the district of Washington. The action was for damages for the taking from the possession of defendant in error (plaintiff below) by plaintiff in error (defendant below) of a stock of goods, wares, and merchandise. The complaint alleges the possession of Paulhamus, the forcible dispossession by plaintiff in error, the refusal to deliver the property on demand, and its value to be $7,500. The answer denies the allegations of the complaint, and sets up an affirmative defense that Drake was United States marshal, and that he acted as such, and not otherwise; that one W. R. Lindsay was the owner of the property, and that he (Drake) levied upon and took possession of the property under a writ of attach-

[1] Rehearing pending.

ment issued from the United States circuit court for the district
of Washington in an action brought by one M. I. Cahn against said
Lindsay. There were the usual and sufficient allegations to sus-
tain the validity of the attachment. The answer also contained
the following allegations:

"That on the 17th day of November, A. D. 1893, the said W. R. Lindsay,
being then the owner and in possession of the property mentioned in the com-
plaint filed herein, together with other property, consisting of real estate in
the county of Pierce, and state of Washington, for the purpose of hindering,
delaying, and defrauding his creditors, and preventing them from collecting
their just debts, unlawfully and fraudulently executed a pretended bill of sale
of the said property mentioned in the complaint to the plaintiff herein, in trust
for the payment of certain debts claimed to be due and owing by said W. R.
Lindsay. Said bill of sale was given for the pretended consideration of $7,-
735.84. That said plaintiff caused said bill of sale to be recorded in the office
of the auditor of Pierce county, state of Washington, on the 22d day of No-
vember, A. D. 1893. That on said day, and as a part of the same transaction,
and as a part of the same purpose of hindering, delaying, and defrauding the
creditors of the said W. R. Lindsay, the said W. R. Lindsay conveyed by a
deed and mortgage all of the real estate owned by him in said Pierce county,
state of Washington, to Josephine M. Lindsay, his wife, and to George B.
Lindsay and Catherine A. Lindsay, relatives of the said W. R. Lindsay, and
caused said deeds and mortgages to be recorded in Pierce county, state of
Washington. That the property mentioned in said bill of sale and in said
deeds and mortgages was all of the property owned by the said W. R. Lindsay.
And by said transfers, as aforesaid, the said W. R. Lindsay attempted to dis-
pose of all of the property owned by him, and attempted to give full control of
said property to the said plaintiff and the other grantees above mentioned.
That the said execution of said pretended bill of sale and the said deed and
mortgage were intended by the plaintiff, and each of the parties above men-
tioned, to be one transaction, and were in fact one transaction, and was in-
tended for the purpose of hindering, delaying, and defrauding the creditors of
the said W. R. Lindsay by attempting to take out of the power of such cred-
itors to reach the stock and assets of the said W. R. Lindsay. That the said
W. R. Lindsay has not any property other than that embraced in the said pre-
tended bill of sale, deeds, and mortgages aforesaid out of which the said judg-
ment of said M. I. Cahn could be satisfied in whole or in part, and that, unless
the said property upon which this defendant has levied under said writ of
attachment can be applied to the payment of said judgment, the same must re-
main wholly unpaid. That all of the said pretended transfers of said property
were made with the intent to delay and defraud creditors of the said W. R.
Lindsay, and were without consideration, all of which was well known to this
plaintiff; and at the time of the levy of the writ of attachment, as above set
forth, the said W. R. Lindsay was the owner of the property mentioned in the
complaint filed herein and levied on under the writ of attachment aforesaid."

The case was tried by the court and a jury, and the latter ren-
dered a verdict for plaintiff (defendant in error) for the sum of
$6,898.50.

There are a number of assignments of error. Those needing
special attention may be summarized under two heads: (1) That
the complaint alleges that the property was taken by Drake per-
sonally, and that the proof shows that it was taken, if at all, by
him as United States marshal, and it is therefore claimed that
the complaint is not proved. (2) The action of the court restrict-
ing the jury to the determination of the proposition whether there
was an actual sale by Lindsay to Paulhamus, or whether the sale
was simulated or colorable with a fraudulent trust in Lindsay,
and refusing to instruct the jury that the acts and conduct and

conveyances by Lindsay should be considered as equivalent to a general assignment of his property to his creditors, and giving preferences, were not valid, because not made for the benefit of all of his creditors in proportion to the amount of their respective claims.

The first ground of error is easily disposed of. We do not think that it is well taken. Poinsett v. Taylor, 6 Cal. 78; Hirsch v. Rand, 39 Cal. 315.

The second ground of error requires more consideration. The effect of Lindsay's acts depends upon the statutes of Washington as interpreted by its tribunals. Union Bank of Chicago v. Kansas City Bank, 136 U. S. 235, 10 Sup. Ct. 1013; May v. Tenney, 148 U. S. 64, 13 Sup. Ct. 491. The statute, so far as we are concerned with it, is as follows (Gen. St. Wash. § 2741):

"No general assignment of property by an insolvent or in contemplation of insolvency for the benefit of creditors, shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective debts."

Sec. 2743, Gen. St. Wash.: "The debtor shall annex to such assignment an inventory under oath of all his estate real and personal. * * * Every assignment shall be in writing and duly acknowledged in the same manner as conveyances of real estate and recorded in the record of deeds of the county where the person making the same resides. * * *"

In Turner v. Bank, 2 Wash. St. 192–194, 26 Pac. 256, the effect of hese provisions came up for consideration. The facts of the case were somewhat similar to those of the case at bar. Justice Scott, speaking for the court, said:

"Lloyd & Co. were engaged in the mercantile business, and, being considerably indebted to various parties, they executed mortgages to certain of their creditors to secure the amounts they were owing them respectively. The Iowa National Bank, having been so secured, began an action to foreclose the mortgage. Appellants Turner & Jay, being judgment creditors, and not secured, sought to intervene in said suit. Their petition in intervention alleges that Lloyd & Co. were indebted largely in excess of their ability to pay; that the mortgages aforesaid covered all of their property, and were all executed on the same day; and that the execution of such mortgages, under the circumstances, was, in effect, an assignment of their property for the benefit of the parties to whom the mortgages were made, and that it was fraudulent as to appellants. Appellants asked that the mortgage be adjudged void as to them, and the property held subject to execution for the satisfaction of their judgment. An execution had been issued thereon, and returned nulla bona prior to said intervention. The plaintiffs demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer. There is no law in this state to prevent a debtor, even though he be in failing circumstances, from paying or securing a portion of his creditors, so long as he does so in good faith, although he should dispose of his entire property in that way, and leave other debts unsatisfied. It is not disputed that this mortgage, and also the others, were given for the purpose of securing bona fide debts. There is no reason in justice or equity why this particular mortgage should be held void, and the mortgagee deprived of its security, in order that the property may be made available to satisfy the claim of these intervening creditors. The judgment is affirmed."

The question was again considered in Furth v. Snell, 6 Wash. 542–546, 33 Pac. 830. In that case an insolvent debtor conveyed all his property to one creditor, and it was contended, as in the case at bar, that the conveyance should be held in law as equivalent to an assignment. The court say:

"We are unable to agree with respondents' contention in the premises. While we have an assignment law which provides that an insolvent debtor may turn his property over for the benefit of his creditors, and by so doing, under some circumstances, may obtain a discharge of his indebtedness, and while a preference of creditors in such transaction will not be permitted, yet the assignment itself is not compulsory. It is entirely optional with the debtor whether he will avail himself of the provisions of this act. If he does not choose to resort to proceedings in insolvency, there is no way of compelling him to do so, and we have previously held that a debtor, even if in failing circumstances, may in good faith dispose of his entire property for the purpose of paying a portion of his debts, although other debts are left unsatisfied. Turner v. Bank, 2 Wash. St. 192, 26 Pac. 256; Ephraim v. Kelleher, 4 Wash. 243, 29 Pac. 985; Benham v. Ham, 5 Wash. 128, 31 Pac. 459; Samuel v. Kittenger, 6 Wash. 261, 33 Pac. 509."

A Colorado statute providing for general assignments came up for consideration in May v. Tenney, supra. The parts passed upon were as follows:

"Any person may make a general assignment of all his property, for the benefit of his creditors, by deed, duly acknowledged, which, when filed for record in the office of the clerk and recorded in the county where the assignor resides, or, if a non-resident, where his principal place of business is, in this state, shall vest in the assignee the title to all the property, real and personal, of the assignor, in trust, for the use and benefit of such creditors."

"No such deed of general assignment of property by an insolvent, or in contemplation of insolvency for the benefit of creditors, shall be valid, unless by its terms it be made for the benefit of all his creditors, in proportion to the amount of their respective claims."

"* * * But nothing in this act contained shall invalidate any conveyance or mortgage of property, real or personal, by the debtor before the assignment, made in good faith, for a valid and valuable consideration."

They are identical in effect, therefore, to the Washington statute. Justice Brewer, after an able review of cases, including some cited by plaintiffs in error, said:

"This statute, so far as we are advised, has not been before the supreme court of Colorado for construction; at least not for any question involved in this case. The first section, it will be perceived, gives permission to make a general assignment. There is no compulsion. There is neither in terms nor by implication any duty cast upon an insolvent to dispose of his property by a general assignment, or anything which prevents him from paying or securing one creditor in preference to others. On the contrary, the last half of section 18 plainly recognizes the right of a debtor to prefer by payment or security; and, in the light of this statute, the quotation which we have made from the supreme court of Colorado becomes pertinent, which clearly affirms the right of a debtor to do with his property as he pleases, except as in terms restrained by statute; and a statute which simply permits a debtor to make a certain disposition of his property works no destruction of his otherwise unrestrained dominion over it."

We think, therefore, that under the Washington law an assignment must be voluntary, and that an actual intention to assign must exist, and that such an intention cannot be imputed to an insolvent debtor because he conveys or mortgages all his property to one or more creditors. It hence follows that the instructions asked by plaintiff in error were rightfully refused, and, there being no other error in the case prejudicial to him, the judgment of the circuit court is affirmed.