[No. 6130. Decided September 25, 1906.]

C. E. McAVOY, *Respondent*, v. I. H. JENNINGS, *Appellant*.[1]

FRAUDULENT CONVEYANCES—ACTION TO SET ASIDE—COMPLAINT—INSOLVENCY. The complaint in an action by a creditor to set aside a fraudulent composition with creditors is demurrable where it fails to allege either the insolvency of the debtors or an execution and return of *nulla bona*.

SAME—PREFERENCES. A debtor in failing circumstances may make a preference to a portion of his creditors, transferring his property to a trustee for equal division among such of the creditors as will stipulate to discharge their claims upon receiving their pro rata share of the assets.

SAME—SALES IN BULK—COMPOSITIONS WITH CREDITORS. A transfer of a stock of goods to a trustee, to be sold and applied to debts as a composition with all creditors who would discharge their claims upon receiving their pro rata share of the proceeds, is not a sale of goods in bulk within the meaning of Laws 1901, p. 222, regulating such sales.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 17, 1905, in favor of the plaintiff, a creditor, against the garnishee defendant, an assignee for the benefit of creditors. Reversed.

*Gray & Stern*, for appellant. An assignment for the benefit of creditors with a proviso for a release of claims is valid. *Patty-Joiner & Eubank Co. v. Cummins*, 93 Tex. 598, 57 S. W. 566; *Robinson v. Rapelye and Smith*, 2 Stew. (Ala.) 86; *Todd v. Buckman*, 11 Me. 41; *Halsey v. Whitney*, 4 Mason 206; *Coakley v. Weil*, 47 Md. 277; *Smith v. Millett*,

[1]Reported in 87 Pac. 53.

11 R. I. 528; *Kellogg v. Cayce,* 84 Texas 213, 19 S. W. 388; *Gordon v. Canonn,* 18 Gratt. (Va.) 387; *Clarke & Co. v. Figgins,* 27 W. Va. 663; *Brashear v. West,* 7 Pet. 608, 8 L. Ed. 589; *Pearpoint v. Graham,* Fed. Cas. No. 10,877; *Vietor v. Glover,* 17 Wash. 37, 48 Pac. 788, 40 L. R. A. 297; *Turner v. Iowa Nat. Bank,* 2 Wash. 192, 26 Pac. 256; *Ephraim v. Kelleher,* 4 Wash. 243, 29 Pac. 985, 18 L. R. A. 604; *Benham v. Ham,* 5 Wash. 128, 31 Pac. 459, 34 Am. St. 851; *Furth v. Snell,* 6 Wash. 542, 33 Pac. 830; *Samuel v. Kittenger,* 6 Wash. 261, 33 Pac. 509; Bump, Fraudulent Conveyances (3d ed.), 186.

*John W. Roberts, for respondent,* in contending that the assignment was void, cited: 4 Cyc. 191; *Patty-Joiner & Eubank Co. v. Cummins,* 93 Tex. 598, 57 S. W. 566; *Lawrence v. Horton,* 15 Fed. 853; *Muller v. Norton,* 19 Fed. 719; *Jaffray v. McGehee,* 107 U. S. 361, 2 Sup. Ct. 367, 27 L. Ed. 495; *Keevil v. Donaldson,* 20 Kan. 165; *Donoho v. Fish Bros. & Co.,* 58 Tex. 168; *Pearson v. Crosby,* 23 Me. 261; *Vose v. Holcomb,* 31 Me. 407; *Todd v. Bucknam,* 11 Me. 41; *Collier v. Davis,* 47 Ark. 367, 1 S. W. 684, 58 Am. Rep. 758; *Robinson v. Belt,* 187 U. S. 41, 23 Sup. Ct. 16, 47 L. Ed. 65; *Duggan v. Bliss,* 4 Colo. 223, 34 Am. Rep. 80; *Atkinson v. Jordan,* 5 Ohio 293, 24 Am. Dec. 281; *Greeley v. Dixon,* 21 Fla. 413, 58 Am. Rep. 673; *Grover v. Wakeman,* 11 Wend. 187, 25 Am. Dec. 624; *Hubbard v. McNaughton,* 43 Mich. 220, 5 N. W. 293, 38 Am. Rep. 176; *Curtain v. Talley,* 46 Fed. 580; *Miller v. Conklin & Co.,* 17 Ga. 430, 63 Am. Dec. 248; *McBride v. Bohanan,* 50 Ga. 527; *Francis v. Herz & Co.,* 55 Ga. 249; *Hurd v. Silsby,* 10 N. H. 108, 34 Am. Dec. 142; *McReynolds v. Dedman,* 47 Ark. 347, 1 S. W. 552; *McConnell v. Rakness,* 41 Minn. 3, 42 N. W. 539; *Brown v. Knox,* 6 Mo. 302; *Drake v. Rogers,* 6 Mo. 317; *Bradley v. Ames,* 50 Mo. 387; *Jeffries v. Bleckmann,* 86 Mo. 350; *May v. Walker,* 35 Minn. 194, 28 N. W. 252; *Nesbitt v. Digby,* 13 Ill. 388; *Howell v. Edgar,* 3 Scam. 417; Wilson's Accounts,

4 Pa. St. 430, 45 Am. Dec. 701; *Widgery v. Haskell*, 5 Mass.
144, 4 Am. Dec. 41; *Spaulding v. Strang*, 38 N. Y. 9:
*Borden v. Sumner*, 4 Pick. 265, 16 Am. Dec. 341, and note:
*Graves v. Roy*, 13 La. 454, 33 Am. Dec. 568; Burrill, As-
signments, §§ 192, 193; *Stewart v. Spenser*, Fed. Cas. No.
13,437; *Marsh v. Bennett*, 5 McLean 117, 128; *Ware v. Wan-
less*, 2 Wyo. 144; *Focke v. Blum*, 82 Tex. 436, 17 S. W. 770:
*Orr & Lindsey Shoe Co. v. Ferrell*, 68 Tex. 638, 5 S. W. 490:
*Cleveland v. Battle*, 68 Tex. 111, 3 S. W. 681.

DUNBAR, J.—On November 19, 1903, M. J. Harkins, L. W.
Harkins and E. E. Harkins, copartners under the firm name
of The Harkins Company, executed with I. H. Jennings, the
appellant herein, a certain agreement in writing. This agree-
ment was to the effect that the Harkinses had been carrying
on a general grocery business, and had incurred debts which
were enumerated in a list of creditors attached to the agree-
ment, stating that, desiring to pay off such debts, they turned
over their property to Jennings on the condition that he
should collect the book accounts, sell the property and, after
deducting the expenses of such business, apply the proceeds
remaining, equally and ratably among the list of creditors,
with this provision:

"Provided, however, that each creditor, before being en-
titled to receive his pro rata under the terms of this agree-
ment, shall deliver to the party of the second part a release
of all claims against the said parties of the first part."

This agreement in full may be found in the case of *McAvoy
v. Jennings*, reported in 39 Wash. 109, 81 Pac. 77. The
instrument was signed, sealed and executed by The Harkins
Company and by Jennings, and the list of creditors for
whose benefit the transfer was made was attached. Im-
mediately upon the execution of this agreement, Jennings
took possession of the assets mentioned therein, sold the
tangible property, and proceeded with the collection of the

book accounts. The American Savings Bank & Trust Company was one of the creditors included in the list attached to the trust deed.

After the transfer to Jennings had been made, the bank assigned its claim to McAvoy, the respondent herein, who commenced an action in the superior court of King county to reduce the claim to judgment against the members of The Harkins Company. In that action McAvoy caused Jennings to be summoned as garnishee. Jennings answered, denying any indebtedness to the defendants, or the possession of any property belonging to them; but by way of further and explanatory answer, set forth fully the trust deed and all other facts above recited, and showed that, at the time of the service of the writ of garnishment upon him, he had in his hands the sum of $850, which he was prepared to pro rate among the creditors in accordance with the terms and conditions of the written agreement, and asked for a discharge. The plaintiff filed an affidavit controverting the answer of the garnishee, in which he admitted all the affirmative facts recited by the garnishee, but alleged that the transaction between The Harkins Company and Jennings was fraudulent and void as to creditors, because it was without consideration and because there had been no compliance with the sales-in-bulk law. The controverting affidavit further denied that the transfer was made with the consent of all the creditors, or that the plaintiff or his assignor had knowledge of, or consented to, or ratified, the transfer; alleged that the transfer was made to hinder, delay and defraud creditors; and prayed that the garnishee be held upon his answer, and that judgment be rendered against him in favor of plaintiff. Upon this issue a trial was had before the court, but there was no testimony advanced which it is necessary to consider; so that the case must be determined upon the character of the written agreement itself. The court decided in favor of plaintiff and against the garnishee, for the full amount of plaintiff's

judgment against the original defendants.   From the judgment entered against the garnishee defendant, this appeal is prosecuted.

Without setting up the findings of fact and conclusions of law, we will proceed at once to discuss the legal propositions involved.   It is contended by the appellant that, inasmuch as there is no allegation in the controverting affidavit of the respondent and no proof offered to show that the defendants, The Harkins Company, were insolvent at the time this trust deed was made, the respondent will not be heard to assail the validity of the deed.   And unquestionably that has been the uniform holding of this court.   This was decided in *Wagner v. Law*, 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 Am. St. 56, 15 L. R. A. 784, in which the court quoted approvingly from *Pearson v. Maxfield*, 51 Iowa 76, 50 N. W. 77, where it was said:

"If at the time of the issuance of the execution, the execution debtor had other property out of which the execution could have been satisfied, the plaintiff should have levied upon such property instead of upon the property in question, which could be effectually reached only through the aid of a court of equity."

This court added:

"Of course, if it is necessary to prove insolvency, it is necessary to allege it, as the defendant has a right to prepare his defense with reference to the allegations of the complaint, . . . we decide that this kind of an action cannot be sustained without an allegation and proof that there was no other property of the judgment debtor at the time of the conveyance out of which the creditor could satisfy his judgment or claim, and that, therefore, the complaint does not state facts sufficient to constitute a cause of action."

See, also, *Hamilton Brown Shoe Co. v. Adams*, 5 Wash. 333, 32 Pac. 92, where it was said by this court:

"If this is to be regarded as an action to set aside a fraudulent conveyance, the complaint is plainly insufficient, for it is neither based upon a return of *nulla bona*, nor an allegation that there was no other property out of which

plaintiff's claim could be satisfied.   Courts will not enter into an investigation of the merits or demerits of a conveyance at the instance of any petitioner, until it appears that he has some interest in the determination of that question, and he cannot have any practical interest if the debtor has other property which will respond to his execution.   His right is limited to the satisfaction of his claim; it does not extend to enforcing its satisfaction out of some particular property of the debtor."

There must be either an allegation of insolvency or an allegation of the issuance of an execution and return of *nulla bona*, which implies insolvency.

But, lest the action should be commenced again and these allegations made, we think it best to determine the main question in the case, viz., was the agreement above set forth void by reason of the proviso therein that each creditor before being entitled to receive his pro rata should deliver to the party of the second part a release of all his claims?   Upon this question there is a hopeless division of authority; but while this particular question has never been decided by this court, we have decided uniformly that an insolvent debtor had a right to prefer creditors.   This rule was first laid down in *Turner v. Iowa Nat. Bank*, 2 Wash. 192, 26 Pac. 256, where it was decided that, under the laws of this state, a debtor in failing circumstances could mortgage his entire property to secure *bona fide* debts to a portion of his creditors, and leave the debts due other creditors unsatisfied, the court in the course of its remarks saying:

"There is no law in this state to prevent a debtor, even though he be in failing circumstances, from paying or securing a portion of his creditors, so long as he does so in good faith, although he should dispose of his entire property in that way, and leave other debts unsatisfied."

There is no question raised in this case that the debts which were sought to be paid were not honest debts, or that there was any attempt to defraud any other creditors by the payments of dishonest debts; but the sole contention is that the

debtor had no right to stipulate that the creditor, as a con-
dition of receiving his pro rata, deliver to the debtor a re-
lease of all claims against him. To the effect that the debtor
had the power in this state to prefer his creditors, see, also,
*Ephraim v. Kelleher,* 4 Wash. 243, 29 Pac. 985, 18 L. R. A.
604; *Benham v. Ham,* 5 Wash. 128, 31 Pac. 459, 34 Am. St.
851; *Furth v. Snell,* 6 Wash. 542, 33 Pac. 830; *Samuel v.
Kittenger,* 6 Wash. 261, 33 Pac. 509. And this same doc-
trine was reannounced in *Vietor v. Glover,* 17 Wash. 37, 48
Pac. 788, 40 L. R. A. 297, in a case where practically the
same transaction was had as in the case at bar. There it
was again said:

"It is the established law of this state that an individual,
although insolvent or in failing circumstances, may pay or
secure one or more creditors to the exclusion of others equally
meritorious, even if by so doing he exhausts the whole of his
property."

It was also said that the manner of giving the preference
was immaterial; that it might be given by deed or in any
mode which effects a legal transfer of the property, and that
partners had the same right that individuals have, citing
Bump on Fraudulent Conveyances (3d ed.), page 186. It
was further said:

"The right to prefer manifestly involves the right to desig-
nate the creditors, or class of creditors, to be preferred;
and it therefore follows that the only ground on which the
unpreferred creditors can justly complain is that the claims
of the preferred creditors are not *bona fide* and real."

Then, if an insolvent debtor has a right to prefer one class of
creditors to the extent of the absolute exclusion of another
class, by a diversion of the funds of the estate by payments
made to the preferred class which exhausts such funds, it
must follow that he has a right to make such payments upon
such terms as he sees fit to impose. If the terms are not
agreed to by the creditor, the only result is that he will not
become a preferred creditor. In this instance, if the respond-

ent's assignor, the bank, had not been incorporated in the
agreement by being placed upon the list of creditors to
whom the payments should be made, he could not have com-
plained under the law which has been announced by this
court. He certainly is not in any better position by reason
of his having been placed among the creditors. The right,
in the absence of a fraud upon the creditors by payment of
claims which are not *bona fide*, to make such payments as the
debtor sees fit to make, it seems to us must logically carry
with it the right to make the agreement which is the basis
of this action.

The contention that the transfer was void by reason of
its being in contravention of what is termed the "sales-in-
bulk" law, chapter 109, page 222, Laws of 1901, is unten-
able, for the reason that this was not a sale within the con-
templation of that act. The object of that law was to pre-
vent the vendor, generally a retail merchant, from escaping
his responsibilities to his creditors by disposing of all his
stock, pocketing the proceeds, and leaving his creditors with-
out redress. But in this case Jennings did not purchase
the stock and, under the terms of the agreement, was not to
pay any portion of the value of the stock, of which he took
possession, to the owners. But he simply acted as a trustee,
so far as the goods assigned to him went, for the benefit of
the creditors. Even if the transaction could be construed to
fall within the scope and intention of that act, the fact that
it failed to comply with all of the provisions of the act would
not render all of the proceeds available to the respondent to
the exclusion or injury of all the other creditors; for, under
such circumstances, the purchaser would simply be held to
be a trustee for the benefit of all the creditors. *Fitz Henry
v. Munter*, 33 Wash. 629, 74 Pac. 1003; *Kohn v. Fishbach*,
36 Wash. 69, 78 Pac. 199, 104 Am. St. 941. The other
minor objections raised to the validity of the agreement we
think are without force.

This judgment must be reversed and the respondent will be allowed, if he sees fit, to receive his pro rata distribution of the estate under the terms of the agreement.

MOUNT, C. J., CROW, HADLEY, and FULLERTON, JJ., concur.