[No. 617.  Decided December 7, 1892.]

HAMILTON BROWN SHOE COMPANY, *Appellant*, v. J. A. ADAMS, A. E. HART AND J. L. HART, *Respondents.*

ASSIGNMENT FOR BENEFIT OF CREDITORS—ATTACHMENT AGAINST PROPERTY ASSIGNED.

Under the provisions of the assignment law (Laws 1889-90, p. 83 ), property in the possession of an assignee of an insolvent debtor is *in custodia legis*, and cannot be seized under a writ of attachment, although the assignment may be alleged to be fraudulent.

*Appeal from Superior Court, Lewis County.*

*Herren & Elliott*, for appellant.

*Leroy A. Palmer, Landrum & Landrum*, and *J. R. Buxton*, for respondents:

An attaching creditor has no right to attack a deed of assignment regular on its face, and thereby give such attaching creditor a lien which will create a preference against the assignor's other creditors. *Lampson v. Arnold*,

19 Iowa, 479; *Fromme v. Jones*, 13 Iowa, 474; *Cowles v. Rickets*, 1 Iowa, 582; *Meeker v. Sanders*, 6 Iowa, 61; *Wells v. Lamb*, 24 N. W. Rep. 682; *Cadwell's Bank v. Crittenden*, 23 N. W. Rep. 646; *Goldsmith v. Willson*, 25 N. W. Rep. 870; *Smith v. Jones*, 25 N. W. Rep. 624; *Bennett v. Denny*, 24 N. W. Rep. 193; *McKinney v. Baker*, 9 Or. 74; *Scott v. Chambers*, 29 N. W. Rep. 94; *Loomis v. Stewart*, 39 N. W. Rep. 660; *Trader's Bank v. Van Wagenen*, 2 Wash. 172; *Covell v. Heyman*, 111 U. S. 176; *Thomas v. Jenks*, 5 Rawle, 221.

The opinion of the court was delivered by

Dunbar, J. — On the 2d day of November, 1891, the respondents executed a deed of assignment, purporting to be for the benefit of all their creditors, appointed J. H. Mallory assignee, and on the same day placed him in possession. On the 11th day of November, 1891, the appellant, schedule creditor, commenced an action against respondents, J. A. Adams, A. E. Hart and G. L. Hart, alleging the assignment; alleging the indebtedness, which is not disputed; alleging the fraud of the assignment and the fraudulent transfer by the assignors of certain real estate deeded and conveyed just prior to the assignment, and the fraudulent execution of a certain chattel mortgage prior to the assignment, and praying: ( 1 ) For judgment in the sum of $980.55, with interest; ( 2 ) that the said deeds mentioned be set aside, revoked, and held for naught; ( 3 ) that the said chattel mortgage be set aside, revoked and canceled; and ( 4 ) that the said assignment be set aside, revoked and canceled. At the same time the appellant sued out a writ of attachment, and caused the same to be levied upon the property alleged to have been fraudulently conveyed, and upon the goods and merchandise in the possession of the assignee, Mallory, and took from his possession all the property which he held as such assignee. On the 21st

day of November, 1891, Mallory, the assignee, intervened
in the action, and applied to the court for an order against
the appellant to show cause why its attachment should not
abate.    The order was issued.    The appellant set up and
pleaded the fraud on the part of the assignors and assignee.
The assignee replied, denying the fraud, and alleging the
*bona fides* of the assignment.    Upon the hearing the court
sustained the petition, and dissolved the attachment as to
the property in the hands of the assignee.    After judg-
ment the appellant appealed to this court, alleging as error
the action of the court dissolving the attachment.    Other
errors were alleged in the notice of appeal, but this is the
only revision asked for by the brief of the appellant.

If this is to be regarded as an action to set aside a fraudu-
lent conveyance, the complaint is plainly insufficient, for it
is neither based upon a return of *nulla bona*, nor an allega-
tion that there was no other property out of which plaint-
iff's claim could be satisfied.    Courts will not enter into
an investigation of the merits or demerits of a conveyance
at the instance of any petitioner, until it appears that he
has some interest in the determination of that question, and
he cannot have any practical interest if the debtor has
other property which will respond to his execution.    His
right is limited to the satisfaction of his claim; it does not
extend to enforcing its satisfaction out of some particular
property of the debtor.    See *Wagner v. Law*, 3 Wash. 500
(28 Pac. Rep. 1109).

But, considering the complaint to be sufficient to sustain
a judgment, the main question at issue here is, can prop-
erty be taken from the possession of an assignee of an in-
solvent debtor by virtue of a writ of attachment?    Or, in
other words, is such property *in custodia legis?*    It is
broadly asserted by Wait, in his work on Fraudulent Con-
veyances, § 316, that it is not for the alleged reason ''that
the assignee is not an officer of the court, but is a trustee

bound to account according to the terms of the instrument, and his authority depends upon the validity of the assignment, and is not conferred by the court.'' The cases cited by the learned author to sustain this declaration are, *Lehman v. Rosengarten*, 23 Fed. Rep. 642, and *Adler v. Ecker*, 1 McCrary, 257 (2 Fed. Rep. 126). Both of these cases were tried in federal courts, and involved to a certain extent a conflict of authority between the state and federal courts, and it is noticeable that the decision in *Adler v. Ecker*, which is a Minnesota case, is in direct conflict with the holdings of the supreme court of that state. *Adler v. Ecker* was decided in 1880, while in *Second National Bank of St. Paul v. Schranck*, 43 Minn. 38 (44 N. W. Rep. 524), decided in 1890, the supreme court of Minnesota decided that "when the assignment is perfected, and to some extent, at least, prior thereto, its entire subject matter, all that is involved, including the assigned estate, passes under the jurisdiction of the district court, *ipso facto*. Immediately, and without any further act, the assigned property is in the custody of the law.'' The court further said:

"The correctness of this practice has never been questioned, and, as a consquence, it has not been decided, although it was held in *Lord v. Meachem*, 32 Minn. 66 (19 N. W. Rep. 346), the assignment being, in fact, valid, that the assignee could not be garnished, for several reasons, the insuperable one being that the assigned property was *in custodia legis*.''

And such, we think, has been the great weight of decision under statutes similar to ours. Of course it depends entirely upon the authority given by the statute to the court.

It is conceded by all the cases that property in the hands of a receiver appointed by the court is property in the hands of the court, but it is claimed that the assignee derives all his power from the assignment, which, says Mr. Wait, is both a guide and measure of his duty. But the

trouble with this theory is, that the premises are misstated, or rather that the subject matter of dispute is stated as a conclusion. An investigation of our particular statute convinces us that the assignee does not derive all his power from the assignment, and that it is not the exclusive guide and measure of his duty. It is true that he obtains primarily his authority to act from the deed of assignment. But the deed of assignment simply inaugurates the proceedings, and when the court obtains jurisdiction of the proceedings it obtains complete jurisdiction. Authority and control over the property are conferred by law upon the court. The insolvent yields to the jurisdiction of the court when he files his deed of assignment. From this time until the final settlement of the estate the court makes orders concerning the control and distribution of the property which are judicial in their nature. Under our statute the assignor cannot invest the assignee with discretionary powers to such an extent that he can distribute the estate in such a manner as to defeat the rights of the creditors. The object of the law is to insure a rightful distribution, and the court will see that such distribution is made. The assignee does not, as Mr. Wait says, distribute the proceeds of the estate under the sole guidance of the assignment. If that were true, it would be an idle thing to bring the estate into court at all, but he must distribute according to the edicts of the law, under the direction of the court. The law provides that the assignment shall be made for the benefit of all the creditors, and the appointment of the assignee in the first instance is simply an initiatory step necessary to turn the property manually over into the custody of the court, and the simple fact of his appointment emanating from the assignor does not particularly distinguish him from an officer appointed by the creditors or by the court. The law provides that upon the filing of a deed of assignment the creditors may make

application to choose an assignee in lieu of the assignee named by the debtor in assignment, whereupon the judge directs the clerk to order a meeting of the creditors to elect an assignee, and in the event the creditors cannot elect by the majority required, the court appoints an assignee, who upon qualifying is clothed with all the authority of the assignee appointed by the debtor. As still further limiting the discretion of the assignee, the law provides that from the time of the pending of an application to elect an assignee by the creditors, and until the time shall be terminated by an election or appointment by the court, no property of the debtor, excepting perishable property, shall be sold or disposed of by the assignee, but that the same shall be safely and securely kept until the election or appointment of an assignee. Sec. 7, Laws 1889–90, p. 85, confers upon the court absolute jurisdiction and control over the estate. It provides that:

"Any person interested may appear within three months after filing such report and file with said clerk any exceptions to the claim or demand of any creditor, and the clerk shall forthwith cause notice thereof to be given to the creditor, which shall be served as in case of summons, returnable at the next term, and the said court shall at such term proceed to hear the proof and allegations of the parties in the premises, and shall render such judgment therein as shall be just, and may allow a trial by jury thereon."

Sec. 8 gives the court jurisdiction in the distribution. It is as follows:

"If no exception be made to the claim of any creditor, or if the same has been adjudicated, the court shall order the assignee to make, from time to time, fair and equal dividends among the creditors of the assets in his hands, in proportion to their claims, and as soon as may be to render a final account of said trust to said court, who may allow such commissions to said assignee in the final settlement as may be considered just and right."

And § 9 provides:

"The assignee shall at all times be subject to the order of the court or judge, and the said court or judge may, by citation and attachment, compel the assignee from time to time to file reports of his proceedings, and of the situation and condition of the trust, and to proceed in the faithful execution of the duties required by this act."

Sec. 10 provides:

"No assignment shall be declared fraudulent or void for want of any list or inventory as provided in this act. The court or judge may, upon application of the assignee or any creditor, compel the appearance in person of the debtor before such court or judge forthwith, or at the next term, to answer under oath such matters as may then and there be inquired of him; and such debtor may then and there be fully examined under oath as to the amount and situation of his estate, and the names of the creditors, and amounts due to each, with their places of residence, and the court may compel the delivery to the assignee of any property or estate embraced in the assignment."

Thus it will be seen that the court has full and complete power over the property of the estate to such an extent that it can compel the delivery of any of the property of the estate to the assignee. The law certainly does not intend that one of its provisions shall render another provision nugatory, and yet how futile would be the action of the court compelling the delivery to the assignee of the property for the purpose of distributing its proceeds if the same could be taken from the assignee by a writ of attachment, or any other process. Such a practice would certainly lead to interminable confusion, creating fraud and endless trouble.

The Iowa statute seems to be substantially the same as ours, and the supreme court of Iowa, in *Hamilton Brown Shoe Company v. Mercer* (51 N. W. Rep. 415), a leading case, decided February 2, 1892, the plaintiff in that case

being the plaintiff in the case at bar, and the cases being practically identical, held that the property in the hands of the assignee was not subject to attachment.    And the court says:

"The primary authority of the assignee is derived from the assignment, for it is voluntary; but, when made, it puts in operation the provision of the law, which, through the agency of the court, guides, guards and controls the entire administration of the estate."

But in addition to what has been said, section 1 of the insolvency act provides in direct terms that "such assignment shall have the effect to discharge any and all attachments on which judgment shall not have been taken at the date of such assignment."    Certainly the very strongest implication is, that an attachment could not be levied after the date of the assignment.    It would be both ridiculous and unjust to destroy a lien which was rightfully in existence before the property was assigned, and supplant it with one asked for after the assignment.    Appellant asserts that under the provisions of § 10, which provides that the court may compel the delivery to the assignee of any property or estate embraced in the assignment, that there is no method provided in the act of reaching any property which should have been, but was not, conveyed by the assignment.    If this were true it could not affect the standing of the property that was in the hands of the assignee; that property is safe in the hands of the court, placed there by the act of the assignor, and it will be distributed by the court regardless of the *bona fides* of the assignment.    That is a question which only affects the discharge of the assignee. Such is evidently the scope and meaning of § 15.    But we do not understand that the provision in the latter part of § 10 is restricted to the property set forth in the inventory, for notwithstanding the provisions for the inventory the law especially provides that no assignment shall be declared

fraudulent or void for want of any list or inventory. And the court under the provisions of § 10 can reach out its arm, and compel the delivery to the assignee of any property embraced in the assignment, if in the inventory, or, if not embraced in the inventory, it will be inserted in an additional inventory provided for in § 11. And if the court can compel the bringing in of all the property no injustice can be done.

So far as the allegations of fraud are concerned in this case, the ascertainment of which would tend to defeat the discharge, we have not considered them, for there is no proof whatever submitted.

The judgment is, therefore, affirmed.

ANDERS, C. J., and HOYT, SCOTT and STILES, JJ., concur.