(60 N. W. Rep. 988.)

---

STATE *ex rel* ENDERLIN STATE BANK *vs.* RODERICK ROSE.

Opinion filed March 31st, 1894.

### Assignment for Benefit of Creditors—Property not in Custody of Law.

An assignment for the benefit of creditors under the provisions of our statutes does not place the property of the assignor in custody of law.

### Void Order of District Court.

Such property having been attached in the hands of the assignee, the District Judge of the district in which such assignment was executed made an order directing the sheriff forthwith to surrender possession thereof to the assignee on the theory that the property was in custody of the court. Such order was not made in any action or special proceeding pending in court. It was granted upon the mere affidavit of the assignee, without hearing the sheriff or the plaintiff in the attachment suit, and without notice to them, or either of them. *Held*, that the order was absolutely void, and should be set aside on *certiorari*. *Held*, further, that the plaintiff in the attachment suit was the person beneficially interested, within the meaning of § 5508, Comp. Laws, and could therefore sue out the writ.

### Action Against Sheriff—Not Adequate Remedy at Law.

*Held*, further, that the right of the plaintiff to hold the sheriff responsible for the property attached, for the reason that he could not justify surrender of the property under a void order, was neither an adequate nor a speedy remedy, within the meaning of § 5507, Comp. Laws, which forbids the issue of the writ of *certiorari* when the relator has such a remedy.

### Action Against Sheriff is Not a Remedy.

*Held*, further, that such a remedy against the sheriff is not a remedy at all, within the meaning of this section, for the reason that the remedy therein referred to is one which, like an appeal or a writ of error, will enable the relator to annul the proceeding complained of as void.

### Certiorari—Restitution Under.

On *certiorari* this court has power to order restitution of everything taken from the relator under the void proceeding which is annulled.

### Judgment on Certiorari is Entered in Supreme Court.

The judgment on *certiorari* is entered in this court. No mandate is sent to the inferior tribunal to render judgment. For this reason, and because the District Court is utterly without jurisdiction in the matter, and therefore has no jurisdiction to order restitution, the judgment in this case annulling the order will contain a direction that a writ of restitution issue out of this court to restore to the sheriff the property taken from him under the order.

### Direction to Assignee—Void.

As the order directed the sheriff to surrender possession of the property, the application for the writ is not premature because the assignee was directed by the order to hold property until the validity of the assignment should be determined, or until the further order of the court. So far as the right of the relator to have the sheriff hold and sell the property to satisfy the plaintiff's claim is concerned, the proceeding has terminated.

### Attachment Continued by Giving Appeal Bond.

It was contended that relief should not be granted relator, because, by the surrender by the sheriff under the order of possession, the lien of the attachment was lost; that no new levy could be made, because the warrant had been returned by the sheriff, and also because it had been set aside by the District Court; and that, therefore, relator could derive no benefit from an annulment of the void order and from restitution of possession. There is nothing to show that the warrant has been returned; nor does it appear that the plaintiff in the attachment suit, who has appealed from the order vacating the attachment, has not secured a continuance of the life of the warrant of attachment by giving the bond prescribed by § 5228, Comp. Laws. (Might not a new warrant of attachment issue on the same papers if the old one had been returned, and the property seized and held under the new warrant?) *Held*, that the court would not deny relief on these grounds, as these questions are not directly before the court. After the sheriff has taken possession, they can all be raised and tried in actions to which the proper persons are parties, and should be settled in that way, and not in this proceeding. The judgment in this case does not settle them, or conclude any one with respect to them. It is only when it is clear, beyond all doubt; that relator can derive no benefit from *certiorari*, that the writ will be denied.

Original application by the Enderlin State Bank for an order to show cause why a writ of *certiorari* should not issue to Roderick Rose, Judge of the Fifth Judicial District Court. Conditional order.

*Ed. Pierce, Edward Engerud,* and *Newman, Spalding & Phelps,* for petitioner.

· *G. K. Andrus* and *Ball & Watson*, for repondent.

CORLISS J.   We are asked to issue a writ of *certiorari* to Hon. Roderick Rose, judge of the district court for the fifth judicial district.   It is agreed by counsel that the facts before us are the same facts which would be disclosed by a return to the writ.   Our decision, therefore, will not only settle the preliminary question whether the writ should issue, but also the ultimate question whether the order of the District Judge sought to be reviewed by this proceeding was valid or void.   An assignment for the benefit of creditors was made by one Reuben P. Jennings, an insolvent, to M. H. Kiff.   The assignee accepted the trust, and the assignment was duly recorded.   The inventory required by the statute was duly filed, and the necessary bond given by the assignee.   The assignor resided, and the assignment was recorded in Barnes County, in the Fifth Judicial District of the state.   Subsequently, the relator, a creditor of the assignor, commenced an action against him in the District Court of the Fourth Judicial District.   In that action a warrant of attachment was issued, directed to the sheriff of Barnes County, and under this warrant the sheriff levied on the property which was in the hands of the assignee under the assignment.   Thereupon Judge Rose, upon the application of the assignee, and without notice, made the following order:   "In the matter of the assignment of R. P. Jennings to M. H. Kiff, assignee.   Upon reading the affidavit of M. H. Kiff, assignee, and of R. P. Jennings in the above entitled matter, and upon consideration thereof, it is hereby ordered that Hans C. Stenshoel, sheriff of Barnes County, North Dakota, forthwith deliver to M. H. Kiff, assignee, all the stock of merchandise, moneys, and personal property, of all kinds whatsoever, formerly belonging to said Reuben P. Jennings, which he, the said sheriff, took from said M. H. Kiff, the assignee, by virtue of attachments issued out of the District Court of Ransom County, North Dakota, in the cases of *The Enderline State Bank* v. *Reuben P. Jennings*, and *George R. Newell & Co.* v. *Reuben P. Jennings*; and it is further ordered

that the said assignee proceed under the said assignment according to law, and hold the proceeds of the sales of the assets until the validity of the said attachments can be determined, and until the further order of this court. Done at Valley City, N. D., December 13th, 1893. Roderick Rose, Judge. To Hans C. Stenshoel, Sheriff of Barnes County, N. D." The order was not made in any action or special proceeding pending before the court, and for that reason it is here contended that it is utterly void for want of jurisdiction. It is this order which we are asked to annul by this proceeding. But it might not be decisive of this question that the order was made in a summary manner. If the position taken by the learned trial judge, that the property attached was in custody of law, is correct, then it may well be that the court had power to restore, in a summary manner, the possession of the property to the officer of the court from whom it had been taken. See *Sabin* v. *Adams*, (Wash.) 32 Pac. 793. Therefore, whether the court had power to make this order depends upon the solution of the single question whether the property was in the custody of the law when the sheriff seized it. If it was not, it is too obvious to justify discussion that the order was absolutely void.

The section of the assignment law upon which rests this contention of the learned trial judge is section 4675, Comp. Laws. We quote it in full: "After the lapse of six months from the date of filing his bond the assignee, on motion of any one of the creditors, with ten days' notice, accompanied by an affidavit of the creditor, his agent or attorney, setting forth his claim and the amount thereof, and that no account has been filed within six months, may be ordered by the court, or by the judge thereof, at any place in his judicial district, to render an account of his proceedings within a given time, to be fixed by the court, or the judge thereof, not to exceed fifteen days. All proceedings under this title shall be subject to the order and supervision of the Judge of the District Court of the county in which such assignment was made, and such judge may, from time to time, in his

discretion, on the petition of one or more of the creditors, by order, citation, attachment or otherwise, require any assignee or assignees to render accounts and file reports of his or their proceedings and of the condition of such trust estate, and may order or decree distribution thereof; and such judge may, in his discretion, for cause shown, remove any assignee or assignees and appoint another or others instead, who shall give such bonds as the judge, in view of the condition and value of the estate, may direct, and such order or removal and appointment, shall in terms transfer to such new assignee or assignees all the trust estate, real, personal and mixed, and may be recorded in the deed records in the office of register of deeds of any county wherein any real estate affected by the assignment may be situated. And such judge may by order, which may be enforced as upon proceedings for contempt, compel the assignee or assignees so removed to deliver all property, money, choses in action, book accounts and vouchers, to the assignee or assignees so appointed, and to make, execute and deliver to such new assignee or assignees such deeds, assignments and transfers as such judge may deem proper, and to render a full account and report of all matters connected with such trust estate. Whenever any assignee so removed shall have fully accounted for and turned over to the assignee or assignees appointed by the judge, all the trust estate and make a full report of all his doings, and complied with all orders of the judge touching such estate, and also whenever an assignee has fully complied with his trust; he may by order of the judge be fully discharged from all further duties, liabilities and responsibilities connected with the trust. In either case he shall give notice by publication in some newspaper of the county, if there be one printed and published therein, if not, in a newspaper published at the capital of the territory, once in each week, for at least three weeks, that he will apply to such judge for such discharge, at a time and place to be stated in such notice, which time shall not be more than three weeks after the last publication of the notice. If upon the hearing the judge shall be satisfied that the assignee

is entitled to be discharged, he shall make an order accordingly; or if, in the opinion of the judge, anything remains to be done by such assignee, he may require the performance thereof before making such order. Such order shall have the effect of discharging the assignee and his sureties from all further responsibility in respect to the trust, and such order shall not be refused on account of any failure on the part of the assignee to comply with the formal provisions of law, where no loss or damage to any one shall have occurred through such failure. Whenever the trust estate shall have been taken out of the hands of the assignee by proceedings in bankruptcy in the Federal Court, the assignee may in like manner be discharged, upon showing that he has fully accounted with the assignee in bankruptcy, and turned over to him the whole of the trust estate." The other provisions of the law need not be here referred to. It is very clear to our minds that our statutes regulating assignments for the benefit of creditors do not constitute either an insolvency or a bankrupt law. An assignment executed under them creates a mere trust. If valid, the title to the property vests in the assignee, in trust to be disposed of in strict accordance with the terms of the assignment, except in the single case of a preference. If the instrument contains a preference, the assignment is void, but the title is not kept from passing from the assignor on that account. In such a case the statute declares that the whole property becomes instantly a trust fund, to be administered in equity in the District Court for the benefit of all creditors alike. It was under this provision of the statute that the case of *Straw* v. *Jenks*, 6 Dak. 414, 43 N. W. 941, was decided. For that reason it is not in point in this case.

Why was it necessary to provide specifically that the property in such a case should become a trust fund, if in all cases the executions of an assignment, however void, placed all the property in the custody of the District Court, to be administered for the benefit of all creditors? The very first section of the assignment law (section 4660) provides that every such assignment is

subject to the statutes relating to fraudulent transfers. This is a declaration that, when the intent of the assignor in making the assignment is to delay or defraud creditors, it is void as to them, and that the innocence of the assignee will not save it, he not being a bona fide purchaser of the assigned property. Comp. Laws, §§ 4656, 4666; Wait, Fraud. Conv. § 319. An assignment void as to creditors is, as to them, no assignment. The title to the property still remains in the assignor, and is subject to attachment by his creditors. Did the legislature intend that a fraudulent, and therefore a void, assignment should place the assignor's property, to which he still holds the title, in custody of the law? What is to become of it in the hands of the court? Will the court administer a void trust? Will it distribute property under a void assignment? There is no power in the court to order a dollar paid to any creditor, except under the terms of the assignment; and what will the court do with the assets when the assignment is void? If, despite the invalidity of the assignment, the court could proceed and distribute the property among creditors, as under bankruptcy or insolvency laws, the case would be entirely different. It would then be assimilated to those cases which are relied upon by counsel for defendant. But there is no such power in the court under our statutes. The court is authorized by the statute to control the proceedings of the assignee in the administration of his trust, upon the theory that there is such a trust created by a valid assignment to be administered. This is all there is meant by the provision of section 4675 that "all proceedings under this title shall be subject to the order and supervision of the Judge of the District Court of the county in which such assignment was made." The object of the provision (and it is upon this provision that defendant rests his contention that he had power to make the order in question) was not to vest in the District Court, as a court of equity, jurisdiction over the trust, for that it would possess independently of the statute, but to authorize that court, and the judge thereof, to exercise a more constant and summary supervision over the assignee, as trustee for the creditors,

than a court of equity could exercise by the use of its ordinary remedies, by conferring upon the judge power to act at all stages in the administration of the trust, upon petition and notice, without a formal suit in equity. This power is conferred upon the chancellor with reference to proceedings under the assignment, and not with respect to such proceedings as assail it as void. When the assignee is disturbed in his possession by a creditor who has the assigned property attached, on the theory that the assignment is void, he must seek redress the same as any other trustee. He must resort to the ordinary remedies to secure a return of the property by replevin, or to obtain damages for its conversion. The District Court can control him in the administration of the trust, if there is a valid trust; but it cannot control a third person who is not proceeding under the trust, but in hostility to it, on theory that the instrument creating it is void. There is no clear provision upon which this claim rests that the property is in custody of law the moment the physical act of executing an assignment is performed. We are asked to infer this legislative intent when the consequence is to lead us to a conclusion which defeats the clear purpose of the legislature. They have declared, in effect, in the very first section, that an assignment is void when the assignor executes it with fraudulent intent; that it is no assignment; that nothing passes by it to the assignee; that the title to all the property still remains in the assignor; that it is still subject to seizure by creditors. And yet how can it ever be seized if it is in the custody of the law? How is it to be removed from the custody of the law? It cannot remain there forever. It is the assignor's property. His creditors have a right to seize it to pay their claims. The court cannot hold it as trust property, for the trust is void, neither can the court administer it as the assets of a debtor in bankrupcty or insolvency proceedings, as there is no law authorizing such a course. What is to become of the property? For what purpose is it in the custody of the law? Who can withdraw it? On what conditions will the court relax its grasp? If the mere physical act of signing a fraudulent and void

assignment places the property in the custody of the court, then, in effect, no assignment can be void, despite the declarations of the statute to the contrary, because no one can assail it by seizure of the property, and thus secure a priority which it is the policy of our law to accord to the diligent creditor as to property which the debtor stills owns; but a bill in equity must be filed to overthrow it, and in that case all creditors can intervene and secure an equal share,—just what they would have secured under the assignment itself. Section 4663, Comp. Laws, specifies five different provisions which will render void an assignment containing any one of them as against nonassenting creditors. Section 4671 declares that the assignment shall be void unless it is recorded, and unless the inventory is filed within 20 days after the date of the assignment. These provisions are of no effect if the property is in custody of the law. No creditor can reach it, and thus secure preference. All must share alike in the property, just the same as though the assignment were valid. Why, then, did the legislature declare it void in such cases? Defendant's position leads to this conclusion: that the legislature have vested, in the District Court of the district in which an assigment is made, exclusive jurisdiction to determine whether the assignment is valid, and have rendered their express declaration that in a large number of cases an assignment is void,—of no possible benefit or use to a diligent creditor,—by cutting him off from all chance of gaining priority by a seizure of the property. They have, according to the contention of the defendant, put the property in the custody of the law for the sole purpose, in many cases, of having the District Court decide that the assignment is void, and that, therefore, neither the assignee nor the court should exercise any control over the property; that it belongs to the assignor, and that therefore, his creditors have a right to seize it for their claims. There is abundant authority to support our view that the property was not in custody of the law when seized by the sheriff. *Farmer* v. *Cobban,* (Dak.) 29 N. W. 12; *Wright* v. *Lee,* (S. D.) 55 N. W. 931–936; *Adler* v. *Ecker,* 2 Fed.

126; *Lapp* v. *Van Norman*, 19 Fed. 406; *Lesher* v. *Getman*, 28 Minn, 93, 9 N. W. 585; *Lehman* v *Rosengarten*, 23 Fed. 642.

In *Lesher* v. *Getman*, 28 Minn. 93, 9 N. W. 585, the court declared that the property was not in *custodia legis*, although the act of 1876, under which the assignment was made, contained just such a provision as is contained in § 4675, Comp. Laws, with respect to the proceedings being subject to the supervision and control of the Judge of the District Court. See § 6 of the General Laws of Minnesota for 1876. In *Wright* v. *Lee*, (S. D.) 55 N. W. 931-936, the court had before it for construction our assignment law, it having been inherited by both states from the late Territory of Dakota. That court came to the same conclusion we have reached; and we refer to the very convincing language of Judge Kellam at pages 936-938. His reasoning is entirely satisfactory to our minds, and the question has been so ably discussed by him that no further comment is needed. We have carefully examined all the cases that hold that the property is in the custody of the law where an assignment for the benefit of creditors is made, but fail to see that they are in point, the statutes construed therein being radically different from ours, so far as this feature is concerned. We cite them for the benefit of the profession. *Lowe* v. *Kean*, (Ill Sup.) 29 N. E. 1036; *Hanchett* v. *Waterbury*, 115 Ill. 228, 32 N. E. 194; *Wilson* v. *Aaron*, (Ill. Sup.) 23 N. E. 1037, and cases cited; *Shoe Co.* v. *Mercer*, (Iowa) 51 N. W. 415; *Bank* v. *Schranck*, (Minn.) 44 N. W. 524; *Scott* v. *McDaniel*, (Tex. Sup.) 3 S. W. 291; *In re Mann* (Minn.) 19 N. W. 347; *Blum* v. *Welborne*, 58 Tex. 157; *Kingman* v. *Barton*, 24 Minn. 295; *Shoe Co.* v. *Adams*, (Wash.) 32 Pac. 92; *Mansfield* v. *Bank*, Id. 789, 999; *Sabin* v. *Adams*, Id. 793. Our conclusion is that the property was not in the custody of the law, and that, therefore, the order of the District Judge was void, it not having been made in either an action or a special proceeding pending before the court, and having been granted without according to the sheriff or the plaintiffs in the attachment any right to be heard, and without giving either of them notice of the application for the order.

Nothing which this court said in *Bank* v. *Freeman*, 1 N. D. 196-202, 46 N. W. 36, conflicts with these views. The question here presented was not before the court in that case. We adhere to what was there said when the language is construed, as it should be, in the light of the facts and questions then before the court.

But it is urged that the writ should not be granted, even assuming that the order is void. We are confronted with the claim made by the defendant that the relator is not the party beneficially interested in the writ, and that he has another plain, speedy, and adequate remedy. The contention is that the sheriff, and not the plaintiff in the warrant of attachment, should have applied for the writ. It is true that the sheriff, after a levy, has a special property in the goods seized, and that this special property is commensurate with his duty under the writ. That duty is to hold the chattels seized as security for any judgment which may be recovered in the action, and sell them at public auction to satisfy such judgment. He may vindicate this special interest in the property by suing in replevin, or for the conversion of the property. 2 Freem. Ex'ns, § 268; Drake, Attachm. (5th Ed.) § 291. The plaintiff in the writ cannot maintain such actions. 2 Freem. Ex'ns, § 268; Drake, Attachm. (5th Ed.) § 291. Indeed, it has been held that he cannot bring an action on the case for damages. *Barker* v. *Mathews*, 1 Denio, 335. But this case has been questioned, and must be deemed overruled. *Howland* v. *Willetts*, 9 N. Y. 170. But it is not at all decisive of the question that the sheriff may resort to those remedies to defend his possession. He is not the real party in interest. He is allowed to defend his possession by those remedies because upon making a levy he becomes answerable to the plaintiff in the writ for the goods attached, if the plaintiff recovers judgment and the attachment is not set aside, or to the defendant therein in case the writ is vacated or the plaintiff fails to recover judgment. He is allowed to defend his possession merely to protect himself against liability to the successful party to the suit. Personally, he has not the slightest interest in the matter, aside from his fees.

The one for whom the seizure is made, for whom the property is held, for whom the sheriff brings replevin or trover if his possession is disturbed, and who will finally reap the fruits of the attachment, is the plaintiff in the writ. Comp. Laws, §§ 4993, 5006. The sheriff is the mere instrument for initiating by seizure, and continuing by possession, the plaintiff's lien under the writ upon the property seized. The plaintiff's lien so secured is said to be private property, within the protection of constitutional provisions. 1 Wade Attacm. § 358, and cases cited; *Williamson* v. *Railroad Co.*, 29 N. J. Eq. 334; *Hannahs* v. *Felt*, 15 Iowa, 141. In *Howland* v. *Willetts*, 9 N. Y. 170, the court says: "All the cases hold, however, that the sheriff acts for and in behalf of the plaintiff in the execution, and that the plaintiff is the substantial party,—the one immediately and directly interested in the levy, and the property or money acquired by virtue thereof." The plaintiff in the writ in this case is therefore the real party interested in setting aside the obstacle to the sheriff's possession of the attached property, *i. e.* the order made by Judge Rose, already set forth in the opinion. It is true that the sheriff is also interested, as he may be held responsible for the property to the plaintiff in the writ if the order is void. He cannot justify a surrender of possession under such an order. It is also true that under certain circumstances the plaintiff in the writ might not, in fact, be financially interested in having the order annulled, and the property restored to the sheriff. If the sheriff's bondsmen are good for the amount of the plaintiff's claim, and the bond has not been exhausted by former recoveries, or if the sheriff himself is good for the amount, the plaintiff would not suffer by the action of the court in making the order. But its interest in maintaining the lien of the attachment cannot depend upon these circumstances. The lien is plaintiff's, and it has a right to assail any illegal interference with such lien. As supporting our view that the plaintiff in the writ is the "party beneficially interested," within the meaning of § 5508, Comp. Laws, see *People* v. *Andrews*, 52 N. Y. 445-449; *Palmer* v. *Circuit Judge*, (Mich.) 47 N. W. 355;

*Town of Hillsboro* v. *Smith*, (N. C.) 14 S. E. 972; *Hart* v. *Scott*, 50 N. J. Law, 585, 15 Atl. 272; *Staates* v. *Inhabitants of Washington*, 44 N. J. Law, 605; *Dexter* v. *Town Council*, (R. I.) 21 Atl. 347; *Miller* v. *Jones*, 22 Cent. Law J. 397; *Campau* v. *Button*, 33 Mich. 525.

It is also urged by defendant that the relator has another plain, adequate, and speedy remedy at law. The order is not appealable. It was not made in an action or a special proceeding. In granting it the District Judge merely exercised, in a summary manner, what he regarded as his control over property which he held to be in the custody of the court through the possession of its officers,—the assignee. But it is insisted that the relator will not be prejudiced by the failure of the sheriff to hold the attached property. He is answerable for it to relator, it is said, whether he keeps or relinquishes possession of it. If it is not forthcoming upon execution, the sheriff cannot justify his failure to sell it because a judge without jurisdiction has ordered it taken from his control, and the relator can sue him for damages and recover. But how is such a remedy adequate when the sheriff and his bondsmen are insolvent, or when the bond has been exhausted and the sheriff is insolvent, or when the creditor's claim exceeds the amount of the sheriff's bond and the sheriff himself is insolvent? Should we deny relator relief, there is no certainty that he will be able to collect his claim from the sheriff or his bondsmen. Moreover, such a remedy is not speedy. Instead of the relator enjoying his speedy right to realize the fruits of his judgment by sale under execution, he is compelled to undertake a more or less protracted litigation against the sheriff and his bondsmen to secure his rights. The mere fact that the relator may treat the proceeding as void will not bar his application for the writ. In most of the cases in which the writ has been allowed, the proceeding was utterly void; but it was not intimated in any of them that this would defeat the petitioner's prayer for the writ. Said the court in *Starr* v. *Trustees*, 6 Wend. 564, 567: "It may be said that these parties have their remedy by action, and therefore

a *certiorari* will not lie. Where there is no jurisdiction, there is a remedy by action; but that does not deprive this court of jurisdiction, nor prevent a party injured from pursuing this remedy. There are many cases in our reports of justices's judgments reversed where they were utterly void." In *People* v. *Judges of Suffolk Co.*, 24 Wend. 249, the court say, at page 253: "Suppose a justice of the peace were to try and decide an action of ejectment; would the common pleas have power to review the proceeding on appeal? Clearly, the whole would be void. Being out of the statute, the only direct proceeding for redress would be by *certiorari*. For this there would be no strict necessity, because the judgment might be regarded as a nullity, and impeached collaterally. Still, this court, would perform what is the main office of a *certiorari*,—the keeping of unfair magistrates within the compass of their power. We should therefore reverse the judgment of the magistrate." "But that a proceeding is void for want of authority or jurisdiction in the inferior tribunal is not a sufficient reason for refusing to remove it by this writ." 2 Spell. Extr. Rel. § 1911, and cases cited. Had the sheriff applied for this writ, it would have been no answer to his application that he could have treated the order as void, and have refused to obey it by surrendering possession of the property. And the right of the plaintiff in the attachment to treat the order as void does not afford him as much protection as it would afford the sheriff. He cannot hold the property himself, or compel the sheriff to hold it. He can only sue the sheriff for damages for surrendering possession under the void order. The language of the statute is that the writ may be granted "when there is no writ of error or appeal nor in the judgment of the court any other plain, speedy and adequate remedy." Comp. Laws, § 5507. "*Nioscitur a sociis*" is a familiar maxim of interpretation. The "other remedy" which will prevent the issue of the writ of *certiorari* must be a remedy which, like a writ of error or an appeal, will set aside and annul the void proceeding of which the petititioner complains. Our statute is the same as that of California; and in *California*

*Pac. R. Co.* v. *Central Pac. R. Co.*, 47 Cal. 528, the court rendered a decision which is an express authority for the proposition which we have just enunciated. Said the court: "It seems clear that the defendant had no plain, speedy, and adequate remedy except by *certiorari.* An action for trespass done under color of the order might, perhaps, give compensation for the actual damages sustained, but defendant has the right to have the order annulled before the damages it purports to authorize have been committed. He is not bound to wait until the injury is done, but may demand relief by way of protection against injuries contemplated by the order itself. The same language was employed in the chapter of the practice act which treated of the writ of mandate; but this court held that to supersede the remedy by mandamus the party must not only have a specific, adequate, legal remedy, but one competent to afford relief upon the very subject matter of the application, and one which is equally convenient, beneficial, and effective as the proceeding by mandamus." The "subject matter" of relator's application for the writ in this case is the annulment of the order claimed to be void. A right to sue the sheriff in the future does not afford the relator relief upon such subject matter. It supplies him with no remedy to set aside this troublesome order, which bars his right to collect his judgment out of the property attached. See, also, *Le Grand* v. *Fairall*, (Iowa,) 53 N. W. 115; *Insurance Co.* v. *Duffie*, (Iowa,) 25 N. W. 117.

It is further insisted that the proceedings are still in *fieri*, and that, therefore, the application for the writ of *certiorari* is premature. But the order complained of does finally settle the very matter of which relator complains. By it the learned judge finally decides that the sheriff cannot hold and sell the property under execution issued on the judgment recovered in the attachment suit until the plaintiff in that suit has attacked and overthrown the assignment, by proceedings in the District Court over which he, the learned judge, presides, instituted for the express purpose of setting aside the assignment. But we hold that

plaintiff had, and has, the right to have the sheriff hold and sell this property under the attachment, judgment, and execution without securing leave from any court. This order stands in his way. Prohibition will not afford him redress. It would have stopped the making of the order, but it will not set it aside. Those two writs are complementary where there is usurpation of jurisdiction. When the proceeding is beyond the reach of prohibition, *certiorari* will lie. If the assignment is valid, the assignee can protect himself and the creditors by replevin or an action for conversion. It is said that the warrant has been returned, and that, therefore, there is nothing under which the sheriff can secure a new lien on the property. There is no evidence of a return before us. If the lien was not lost by surrender of the property under the compulsion of an order of the court, then it would not be necessary for the sheriff to make a new levy; but he would hold the property under the old levy, after the return of the warrant, just the same as in ordinary cases where the warrant has been returned. A return does not destroy a lien which has once attached. *Gerdes* v. *Sears*, (Or.) 10 Pac. 631-633. The return is always made long before judgment and execution. This is not a proceeding in which such questions should be settled. The sheriff should have restored to him the possession of which he was deprived by the error of the judge, and the rights he and the plaintiff will secure by such restoration are a matter for future investigation when the proper parties are before the court. This is true, also, of the claim that no benefit will come to the relator by setting aside the order, for the reason that the attachment has been vacated. It may be that plaintiff, who has appealed to this court from the order vacating the attachment, has given the statutory security provided for in § 5228, Comp. Laws, and in this manner continued in force the attachment pending the appeal. These questions are not directly before us on either the facts or the law, and, should we decide against the relator on these grounds, and refuse to annul the order and direct restitution, we might do it an irremediable injustice, by a

mistake as to the facts or the law, or both, upon questions which are not directly before us, and which can and should be litigated when the proper parties are before the court, and which ought not to be decided until they are directly involved, and have been fully investigated and discussed. If the warrant has been returned and the lien lost, it is by no means clear that the relator may not have a new warrant on the same papers. See *Hamill* v. *Phenicie*, 9 Iowa, 525; *Mojarrieta* v. *Saenz*, 80 N. Y. 547. Under this the property could be seized and held. Nor is it certain that the order vacating the warrant would prevent the issue of a new warrant on the same papers, as the giving of security under section 5228 (and security may have been given) makes it the duty of the court to order the continuance of the attachment, and leaves it as much in force pending the appeal as if the order vacating it had never been made. The rule which withholds the writ of *certiorari* when its issue will be of no benefit to the relator applies only to cases where it is certain that he can derive no advantage from it, and not where the matter is involved in serious doubt, as in this case.

But it is urged that the writ should not be granted, because it will result in no benefit to the relator for another reason. We cannot, it is said, order a return of the property to the sheriff. But, after the order is annulled, the sheriff may retake the property from the possession of the assignee if the lien still exists, or he can secure a new lien by another levy. There will then be no obstacle in his way, as there is at present. In an early Wisconsin case (*In re Booth*, 3 Wis. 1,) it was insisted that the Supreme Court should not issue *certiorari* to review the action of a judge in discharging a prisoner on *habeas corpus* because that court could not order him remanded to custody. In reply to this the court said that "a simple reversal of the order of discharge by this court, without remanding the prisoner, would enable the person from whose custody the relator was discharged to retake the prisoner." See, also, *Welch* v. *Van Auken*, (Mich.) 43 N. W. 371. Whether the sheriff has lost his lien on the property by

surrendering possession to the assignee under the order of the court is not material. If he has lost it, it is important that this order, if void, should be set aside, so that he may levy anew upon the property under the old warrant if he still has it, or under a new one if he has returned the old one; for, while the order stands, it will deter the sheriff from making another levy. A second levy without securing an annulment of the order would only result in another such order, with possible punishment of the sheriff for contempt. We are clear, however, that we are not restricted in our judgment in this proceeding to a mere annulment of the order. Incidental to the power of an appellate tribunal to reverse judgments of an inferior court is the power to order restitution of everything which has been taken from the party who is successful on the appeal, by virtue of the judgment which has been reversed. This power to order restitution is not limited to reversals on appeal or writ of error. It is a power which the court exercises without special statutory authority to render efficacious its appellate jurisdiction. It can exercise the same power when, on writ of *certiorari*, it has annulled the proceeding of some inferior court for want of jurisdiction. A court would be shorn of a power most important to the suitor for the complete redress of the wrong done him by the usurpation of jurisdiction by an inferior court if it were compelled to stop at annulling the void order, without directing that everything be restored to the suitor which was taken from him under its sanction. Where it is shown that the relator in the writ has been thus wronged by the illegal and void proceeding, the superior court will order restitution. *Peacock* v. *Leonard*, 8 Nev. 247; *Paul* v. *Armstrong*, 1 Nev. 82–104; *Arrowsmith* v. *Vanarsdale*, 21 N. J. Law 471; *Ex parte Shotwell*, 10 Johns. 304–307; 2 Spell. Extr. Rel. § § 2042, 2044. And where, as in this case, the judgment is entered in the court issuing the writ of *certiorari*, the writ of restitution will issue from that court, especially where the tribunal whose proceedings are annulled was utterly without jurisdiction. *Peacock* v. *Leonard*, 8 Nev. 247. See, also, *Arrowsmith* v. *Vanarsdale*, 21 N. J. Law, 471; *Paul* v. *Armstrong*, 1 Nev. 82–104.

The direction that restitution be made is often embodied in the judgment of the appellate court. See *Duncan* v. *Kirkpatrick*, 13 Serg. & R. 294; *Flemings* v. *Riddick*, 5 Grat. 272; *Haebler* v. *Myers*, 132 N. Y. 363, 30 N. E. 963; *Ex parte Morris*, 9 Wall. 605; Elliott, App. Proc. § 584; *Morris* v. *U. S.*, 7 Wall. 578; *Kennedy* v. *Hamer*, 19 Cal. 374; *Harlan* v. *Scott*, 2 Scam. 65; *Perry* v. *Tupper*, 71 N. C. 385; *Lee Chuck* v. *Quan Wo Chong*, 81 Cal. 222, 22 Pac. 594. Whether the writ of restitution should issue from the appellate tribunal when the judgment of that court is entered in the court to which the case is remanded for final judgment it is not important to decide. See *Hall* v. *Wells*, 54 Miss. 289, 307; *Vroman* v. *Dewey*, 23 Wis. 626. In this case there is no power in the District Court to order the issue of the writ, as the order annulled is void. There is no action or proceeding before that court in which it can make such order; nor has it jurisdiction over the parties. This proceeding is not before us on appeal. The writ has been issued by this court, not in the exercise of its appellate jurisdiction, but under the power of superintending control over inferior tribunals, vested in this court by the constitution. State Const. § 85. But whether the writ of *certiorari* is issued by this court in the exercise of appellate jurisdiction, or under the power of superintending control, it is clear that the power is vested in this court to issue a writ of restitution when, under *certiorari*, it has annulled an order or judgment of an inferior court under which the successful party in this court has lost property or rights, and it appears that the lower court has no power to order the issuing of such writ. The only ground on which it has been held that the writ should issue from the lower court is that the final judgment is not entered in the superior or appellate court, but that it is entered in the court below on the mandate of the superior or appellate court. In such cases the superior or appellate court will direct the lower court to issue the writ of restitution. See Elliott, App. Proc. § 584; *Hall* v. *Wells*, 54 Miss. 289; *Vroman* v. *Dewey*, 23 Wis. 626. But in this proceeding the judgment is entered in this court. Only a copy of

the judgment is sent below. Comp. Laws, § § 5515, 5516; *Leonard* v. *Peacock*, 8 Nev. 157. No judgment is entered in the District Court upon our mandate, as in ordinary cases on appeal. Moreover, the District Court would have no power to order the issue of a writ of restitution, because, as we have before said, it is utterly without jurisdiction in the matter. We have no power to direct it to make such an order. There is no action or proceeding before it in which it could make such an order. The whole proceeding is before us, and it must be finally disposed of in this court. That it is our duty, under such circumstances, and that it is within our power, to embody, in the judgment of this court annulling the order, a direction that a writ of restitution issue out of this court to restore to the sheriff the property which has been taken from him by this order, is clear upon authority as well as upon principle. *Peacock* v. *Leonard*, 8 Nev. 247. See, also, *Paul* v. *Armstrong*, 1 Nev. 82–104; *Kennedy* v. *Hamer*, 19 Cal. 374; *Arrowsmith* v. *Vanarsdale*, 21 N. J. Law, 471; *Ex parte Shotwell*, 10 Johns. 304–307; 2 Spell. Extr. Rel. § § 2042, 2044. This court is vested with power (but a specific grant was not necessary) to issue "such original and remedial writs as may be necessary to the proper exercise of its jurisdiction." State Const. § 87. And, if the case should be one in which the record did not disclose what had been wrested from the relator by the void proceedings of the inferior court, this court would have full power to inquire into the matter, that the writ, when issued, might specify, the property or right to be restored. In this case it appears upon the record of these proceedings that the sheriff has been dispossessed under the order. While the District Court has no jurisdiction in the matter, still, if it does, in fact, set aside the order which it has made, and also restores the property to the possession of the sheriff, all that could be accomplished by the writ of restitution would be accomplished without it. We will withhold the writ of *certiorari* at present. If satisfied that nothing has been done in conformity with this opinion, after a reasonable time we will issue the writ, and proceed to judgment on the

return, without further argument. The judgment will contain a provision for the issue of a writ of restitution directed to one of the marshals of this court, commanding the officer holding it to place the sheriff in possession of the property taken from him under this void order. All concur.