[No. 1662. Decided March 1, 1895.]

CHARLES E. WHITMAN, *Respondent*, v. MAST, BUFORD & BURWELL CO., *Defendant*, E. E. KELSO *et al.*, *Appellants*.

INSOLVENCY — ASSIGNMENT IN MINNESOTA — EFFECT UPON PROPERTY ELSEWHERE — RIGHTS OF RECEIVER.

An assignment for the benefit of creditors by a debtor in Minnesota of all his property, made under the provisions of the insolvency law of that state, is a voluntary assignment, when made upon the motion of the debtor himself, and will pass the personal property of the debtor in the State of Washington to his assignee.

Where a voluntary assignment of a debtor's property is made under the laws of the State of Minnesota, a receiver subsequently appointed in the insolvency proceedings, upon the removal of the assignee, succeeds to all the rights and title of the original assignee, and may maintain an action in another state for the recovery of debts due him as trustee of the insolvent estate.

*Appeal from Superior Court, Yakima County.*

*Jones & Newman,* for appellants :

This assignment was made under the provisions of § 1 of the act of 1881, ch. 148, Laws of Minnesota, and amendments thereto, which provides for an assignment of all the property of the debtor *wherever situate* by his own motion, and the courts of Minnesota have uniformly held such assignment to be a voluntary one. *Lesher v. Getman,* 28 Minn. 93; *Wendell v. Lebon,* 30 Minn. 236; *Weston v. Loyhed,* 30 Minn. 224; *Simon v. Mann,* 33 Minn. 414; *Covey v. Cutler,* 55 Minn. 18; *May v. Walker,* 35 Minn. 194.

The assignment being a voluntary one will pass to the assignee personal property wherever situated and will have priority over subsequent lienors, unless the assignment conflicts with some positive or customary law of the state where the property may be located. Burrill, Assignments (5th ed.), § 310; *Bentley v. Whittemore,* 19 N. J. Eq. 462 (97 Am. Dec. 671); *Chafee v. Fourth National Bank,* 71 Me. 514 (36 Am. Rep. 345); *In re Paige,* 31 Minn. 136; *Barnett v. Kinney,* 147 U. S. 476; *Smith's Appeal,* 117 Pa. St. 34; *Hanford v. Paine,* 32 Vt. 442 (78 Am. Dec. 586); *Thurston v. Rosenfield,* 42 Mo. 474 (97 Am. Dec. 351); *Woodward v. Brooks,* 128 Ill. 222 (15 Am. St. Rep. 104); *Askew v. La Cygne Exchange Bank,* 83 Mo. 370 (53 Am. Rep. 593); *Campbell v. Colorado Coal & Iron Co.,* 10 Pac. 248; *Ockerman v. Cross,* 54 N. Y. 29; *Bacon v. Horne,* 16 Atl. 794; *Daniels v. Willard,* 16 Pick. 36; *Train v. Kendall,* 137

Mass. 366; *Frank v. Bobbitt*, 155 Mass. 112; *Johnson v. Sharp*, 31 Ohio St. 619 (27 Am. Rep. 529); *Consolidated Tank Line Co. v. Collier*, 35 N. E. 756; *May v. Wannemacher*, 111 Mass. 202.

The owner of this debt had its domicile in the state of Minnesota at the time of the assignment, and the assignment, being valid where made and being made at the domicile of the owner, passed the title to the debt to the assignee and it was vested in him at the time of the service of the writ of garnishment. *Guillander v. Howell*, 35 N. Y. 657; *Birdseye v. Underhill*, 82 Ga. 142 (14 Am. St. Rep. 142); *Burlock v. Taylor*, 16 Pick. 335; *Askew v. La Cygne*, 83 Mo. 370 (53 Am. Rep. 593); *First National Bank v. Walker*, 23 Atl. 696.

*Whitson & Parker*, for respondents:

An assignment made under the Minnesota insolvent law is purely statutory, and has been so construed by the courts of Minnesota. *Jenks v. Ludden*, 27 N. W. 188; *Wendell v. Lebon*, 30 Minn. 234; *In re Mann*, 32 Minn. 60; *Lord v. Meachem*, 32 Minn. 66; *Bennett v. Denny*, 24 N. W. 193; *Simon v. Mann*, 23 N. W. 856; *Mather v. Nesbit*, 13 Fed. 873; *McClure v. Campbell* (Wis.), 37 N. W. 343.

An assignment made under an insolvent or bankrupt law has no extra-territorial effect. *McClure v. Campbell*, 37 N. W. 343; Burrill, Assignments (5th ed.), § 303; *Kelly v. Crapo*, 45 N. Y. 86 (6 Am. Rep. 35); *Lessee of McCullough's Heirs v. Rodrick*, 2 Ohio, 235; *Paine v. Lester*, 44 Conn. 196 (26 Am. Rep. 442); *Willitts v. Waite*, 25 N. Y. 577; *Hanford v. Paine*, 78 Am. Dec. 594, note; 2 Kent, Comm. (12th ed.) 407.

The opinion of the court was delivered by

Scott, J.—On the 17th of September, 1893, the Mast, Buford & Burwell Company, a corporation organized

and existing under the laws of the State of Minnesota, made a general assignment of all its property wherever situate for the benefit of its creditors, and appointed Victor Robertson, of St. Paul, Minn., assignee. E. E. Kelso, a resident of this state, was indebted to said corporation in a large amount upon account. The respondent, Charles E. Whitman, is a citizen of the State of Missouri. On December 12, 1893, respondent recovered a judgment against said corporation in the superior court for Yakima county, this state, and, on the 26th day of February, 1894, caused a writ of garnishment to be served upon the said E. E. Kelso, who answered, setting up the prior assignment of the account to said assignee, and denying his indebtedness to said corporation. April 11, 1894, said assignee, filed his complaint in intervention in said garnishment proceedings, claiming said indebtedness under said assignment. On the — day of December, 1894, upon motion, William Dawson, jr., and Albert B. Ovitt, receivers, were substituted as plaintiffs in the complaint in intervention in place of said assignee.

Respondent interposed a general demurrer to the complaint in intervention and a motion for judgment upon the answer of the garnishee, both of which were sustained by the court, and appellants electing to stand upon the answer of the garnishee and the complaint, the court granted judgment against the garnishee, to all of which rulings the appellants excepted, and from which they now prosecute this appeal.

The main point in controversy is as to whether or not this was a voluntary assignment. It is asserted that the lower court was of the opinion that it was an involuntary one, and it is conceded by appellants that, if the court was right in its view of this question, the judgment should be affirmed. It is also conceded by

both sides that the decisions of the supreme court of Minnesota upon said question should be recognized as binding here.   It is contended by appellants that such assignment is a voluntary one, on the ground that it is only made at the option of the debtor; while the respondent contends that it is involuntary, on the ground that when once the proceedings are set in motion the statute steps in and regulates the entire matter to its determination, and the debtor has no further control thereover in any manner.

The assignment was made under chapter 148, General Laws of Minnesota ( Sess. Laws 1881, p. 193, and the act amendatory thereof, found on page 78, ch. 30, Sess. Laws 1889).   The title of that act is as follows: "An act to prevent debtors from giving preference to creditors, and to secure the equal distribution of property of debtors among their creditors, and for the release of debts against debtors."

The provisions of these acts are that when any debtor shall become insolvent or garnishment shall have been made against him, or the property of any debtor shall have been levied upon by virtue of an attachment, execution or legal process, issued against him for the collection of money, he may make an assignment for the equal benefit of all his creditors, who are required to file releases of their demands against the debtor; and such assignment discharges the attachment garnishment or other levy upon his property, with certain exceptions therein provided.

The assignment must be filed in the office of the clerk of the district court.   An attempt to make an assignment under this act whereby one creditor shall obtain preference over another is punishable as a misdemeanor.   The debtor himself may be restrained from leaving the state and may be required to appear

and make full disclosure as to the disposition of property or in relation to any other matter pertaining to the insolvent estate. Any security given within four months prior to the assignment, with a view to giving preference to any creditor upon a pre-existing debt, shall be void as to all persons or creditors receiving the same, who shall have reasonable cause to believe that such debtor was insolvent. In case of the death of the assignee or receiver, the court may appoint another to fill the vacancy, and the court may for proper cause remove such assignee and appoint another in his stead, and the court shall order such removal upon a two-thirds vote of the creditors. No creditor shall receive any benefit under the provisions of the act, or any payment of any share of the proceeds of the debtor's estate, unless he shall have filed a release of his claim, and thereupon the judge shall enter an order discharging such debtor from any claims of creditors who filed such releases. The assignee or receiver shall, within ten days after his appointment, publish a notice; and all creditors claiming the benefit of the act shall file their releases with the said assignee or receiver within twenty days after the publication thereof. The court directs the distribution of the estate and has control of the assignee or receiver, as the case may be, until settlement, and the act reads, sec. 1: "Which assignment shall be made in accordance with and be governed by the laws of the state of Minnesota."

From all of which it is argued that the assignment was a statutory one under an insolvency law, and was in effect involuntary. And respondent contends that the supreme court of that state, notably in the case of *Jenks v. Ludden*, 34 Minn. 482 (27 N. W. 188), has so

construed it.   In that case the court uses this lan-
guage:

"Now, our insolvent law, and the statute of Wiscon-
sin, regarding assignments for the benefit of creditors,
are essentially different.   Our act of 1881, is, as we
have repeatedly held, a bankrupt act, the assignee
being in effect an officer of the court, and the assigned
property being *in custodia legis*, and administered by
the court or under its direction."

The supreme court of Wisconsin in considering this
act in *McClure v. Campbell*, 71 Wis. 350 (37 N. W. 343,
3 Am. St. Rep. 220), held in accordance with the views
of the respondent here as to the effect of *Jenks v.
Ludden, supra*.   We are of the opinion, however, that
the case of *Jenks v. Ludden* will not bear the construc-
tion contended for, viz., that such assignments are
involuntary, and that the supreme court of Minnesota
by its later decisions does not so recognize it.   It is
true the supreme court of Minnesota has termed this a
"bankrupt" law, but an examination of the decisions
shows that this term is used in a very broad sense and
not in its strict, technical meaning.   They say of the
first section that it provides for "voluntary bank-
ruptcy" and that it "authorizes voluntary assign-
ments and insolvency proceedings."   *May v. Walker*,
35 Minn. 194 (28 N. W. 252), is a later case than *Jenks
v. Ludden*, and in this case the view above stated is
clearly recognized.   The court says, this was a case of
assignment of partnership property only, "the assign-
ment in this case was evidently intended to be a vol-
untary one, under our insolvent act.   Laws 1881, ch.
148.   The only *voluntary assignment there authorized* is
of all the debtor's property and estate not exempt by
law."   The case of *Jenks v. Ludden, supra*, is not at
variance with the foregoing.   In this case the attach-

ment was made in Wisconsin on real estate, and was made prior to the assignment, and the court says:

"We are utterly unable to perceive upon what principle the courts of this state can or ought to interfere and deprive him of the benefit of his lien which he had acquired, prior to the assignment, upon the debtor's real estate in Wisconsin. We find no precedent for any such a thing. Even in England, whose courts hold very firmly that an assignment under a bankrupt or insolvent law has a universal application, and passes all personal property of the insolvent in foreign countries, and that all attachments made thereon after such assignment are invalid, we find no case where they have ever attempted to enjoin a creditor from availing himself of his attachment upon real property situated abroad, whether levied before or after the assignment; and in the case of personal property situated abroad, we find no case where they have denied to a creditor the benefit of his attachment levied *prior* to the assignment."

In *Covey v. Cutler*, 55 Minn. 18 (56 N. W. 255), the supreme court of Minnesota clearly recognizes the voluntary character of these assignments, and says that nothing was said in *Jenks v. Ludden* in conflict therewith. The case of *Covey v. Cutler*, though brief, is directly applicable, and it seems to us decisive of the question that such assignments are regarded in Minnesota as voluntary ones, having the effect of transferring the entire personal property of the debtor wherever situate. If we were not to recognize this construction as binding in this controversy, and were to consider the question independently, we would arrive at the same conclusion and follow the doctrine announced. The act in question has many features in common with our own insolvent law, but we said nothing contrary to the foregoing in the case of *Hamilton Brown Shoe Co. v. Adams*, 5 Wash. 333 (32 Pac. 92), cited by respondent.

The assignment itself shows that it was made by the debtor upon his own motion. It is not an assignment by operation of law, but is the voluntary act of the assignor. The principal distinction between a voluntary assignment and an involuntary assignment in bankruptcy is in its inception. In the one case the assignor's property is placed in the hands of a third party by his own act and with his consent; in the other it is placed in the hands of a third party by operation of law and without his act and against his consent. The subsequent control by the court under statutory regulations does not destroy this distinction. Whether or not an assignment is a voluntary conveyance by the assignor must be decided from a consideration of the manner in which the transfer of the property is made, and not what may be prescribed by the statute as to the manner in which the property is to be disposed of by the assignee after assignment.

In Story on Conflict of Laws, (8th ed.), § 411, it is said:

"There is a marked distinction between a voluntary conveyance of property by the owner, and a conveyance by mere operation of law in cases of bankruptcy *in invitum*. Laws cannot force the will, nor compel any man to make a conveyance. In place of a voluntary conveyance of the owner, all that the legislature of a country can do, when justice requires it, is to assume the disposition of his property *in invitum*. But a statutable conveyance, made under the authority of any legislature, cannot operate upon any property, except that which is within its own territory. This makes a solid distinction between a voluntary conveyance of the owner and an involuntary legal conveyance by the mere authority of law. The former has no relation to place; the latter, on the contrary, has the strictest relation to place. : . . It is therefore admitted that a voluntary assignment by a party, accord-

ing to the law of his domicil, will pass his personal estate, whatever may be its locality, abroad as well as at home. But it by no means follows that the same rule should govern in cases of assignments by operation of law."

This is undoubtedly sustained by the weight of authority.

It is further contended by the respondent that even though Robertson could have maintained this action on the theory of a voluntary assignment, the receivers could not do it, as they derived their authority solely by the appointment of the court in Minnesota. Robertson was removed pending his petition in intervention, and upon application to the lower court the receivers were substituted in said proceeding, to which the respondent objected. The title to the property was vested in Robertson by virtue of the assignment. *Donohue v. Ladd*, 31 Minn. 244 (17 N. W. 381). The law provided that the assignee might be removed and receivers appointed. This was a part of the assignment proceedings and the insolvents in effect assented thereto when they made the assignment, and the receivers must be held to have succeeded to all the rights of the original assignee, and therefore could maintain the action.

Reversed.

Hoyt, C. J., and Anders and Gordon, JJ., concur.

Dunbar, J., dissents.